IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

|  |  |  |
|---|---|---|
| ROBERT BAKER, on behalf of himself and all those entitled to recover for the death of TARA BAKER, | ) ) ) ) | 2 CA-CV 2011-0080 DEPARTMENT A |
|  | ) | O P I N I O N |
| Plaintiff/Appellant, | ) ) |  |
| v. | ) ) |  |
| UNIVERSITY PHYSICIANS HEALTHCARE, an Arizona corporation; BRENDA J. WITTMAN, M.D. and JOHN DOE WITTMAN, wife and husband; ARIZONA BOARD OF REGENTS doing business as UNIVERSITY OF ARIZONA COLLEGE OF MEDICINE, | ) ) ) ) ) ) ) ) |  |
| Defendants/Appellees. | ) ) |  |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C20097222

Honorable Richard Gordon, Judge

VACATED AND REMANDED

---

Law Office of JoJene Mills, P.C.
  By JoJene E. Mills                                                          Tucson
                                             Attorney for Plaintiff/Appellant

Campbell, Yost, Clare & Norell, P.C.
  By Stephen C. Yost                                                        Phoenix
                                         Attorneys for Defendants/Appellees

---

H O W A R D, Chief Judge.

¶1　　　　In this wrongful death action, appellant Robert Baker appeals from the trial court's grant of summary judgment in favor of appellees Dr. Brenda Wittman, University Physicians Healthcare (UPH), and the Arizona Board of Regents (ABOR), based on Baker's failure to present expert testimony in compliance with the requirements of A.R.S. § 12-2604(A)(1).　　Because Baker's expert failed to comply with the statute's requirements and we do not find the statute invalid, we conclude the trial court decided the matter correctly based on the state of the law at the time.　　However, because we clarify the statutory requirements, we vacate the judgment and remand for further proceedings consistent with this decision.

## Factual and Procedural Background

¶2　　　　In reviewing a grant of summary judgment, "[w]e view the facts in the light most favorable to the party against whom summary judgment was entered." *Hamill v. Mid-Century Ins. Co.*, 225 Ariz. 386, ¶ 2, 238 P.3d 654, 655 (App. 2010).　　However, the facts here are largely uncontested.　Baker's daughter, Tara, consulted Wittman after being hospitalized for blood clots. She later died due to other blood clots as a result of alleged malpractice.　Wittman, an employee of UPH, is certified by the American Board of Pediatrics in the specialty of pediatrics with a subspecialty in pediatric hematology/oncology.　Baker sued appellees and others for Tara's wrongful death, claiming Wittman breached the standard of care, resulting in Tara's death.

¶3　　　　Baker disclosed Dr. Robert Brouillard as his expert to testify that Wittman had breached the standard of care.　Brouillard is certified by the American Board of Internal Medicine as a specialist in internal medicine with subspecialties in oncology and

2

hematology. Wittman, UPH, and ABOR moved for summary judgment, arguing that Brouillard was not board certified in the same specialty as Wittman and thus failed to qualify as an expert under A.R.S. § 12-2604. Baker responded that Brouillard was qualified under the statute and that if he was not, the statute was unconstitutional. The trial court concluded that Brouillard was not qualified to testify as an expert against Wittman, rejected Baker's claims concerning the validity of the statute, and granted Wittman, UPH, and ABOR's motion for summary judgment. After the court entered final judgment pursuant to Rule 54(b), Ariz. R. Civ. P., Baker appealed.

## Statutory Interpretation

¶4 Baker first claims the trial court erred in granting summary judgment because Brouillard is qualified to testify about the standard of care under § 12-2604. He argues that both Brouillard and Wittman were trained in hematology, urges we conclude that hematology was the specialty at issue, and cites the website from the American Society of Hematology in support of his position. In reviewing a grant of summary judgment where the material facts are not in dispute, we review "de novo whether the trial court correctly applied the substantive law to those facts." *Ariz. Joint Venture v. Ariz. Dep't of Revenue*, 205 Ariz. 50, ¶ 14, 66 P.3d 771, 774 (App. 2002).

¶5 When interpreting a statute, our goal is "'to fulfill the intent of the legislature that wrote it.'" *Awsienko v. Cohen*, 227 Ariz. 256, ¶ 11, 257 P.3d 175, 177 (App. 2011), *quoting Bilke v. State*, 206 Ariz. 462, ¶ 11, 80 P.3d 269, 271 (2003). We first look to the statute's language and if its meaning is clear, we rely on the plain language rather than utilizing other ways of interpreting the statute. *Id.* We only modify

3

the language in order to "'obviate any repugnancy to or inconsistence with'" legislative intent. *Id.*, *quoting Bd. of Supervisors v. Pratt*, 47 Ariz. 536, 542, 57 P.2d 1220, 1223 (1936). If a statute is ambiguous, such as when terms are undefined, "we determine legislative intent by looking first to the text and context of the statute." *Kent K. v. Bobby M.*, 210 Ariz. 279, ¶¶ 14-15, 110 P.3d 1013, 1017 (2005). And we consider related statutes together, "striv[ing] to achieve consistency among them." *Swift Transp. Co. v. Maricopa County*, 225 Ariz. 262, ¶ 11, 235 P.3d 1209, 1212 (App. 2010).

**¶6**        Section 12-2604(A)(1) provides:

> A. In an action alleging medical malpractice, a person shall not give expert testimony on the appropriate standard of practice or care unless the person is licensed as a health professional in this state or another state and the person meets the following criteria:

> 1. If the party against whom or on whose behalf the testimony is offered is or claims to be a specialist, specializes at the time of the occurrence that is the basis for the action in the same specialty or claimed specialty as the party against whom or on whose behalf the testimony is offered. If the party against whom or on whose behalf the testimony is offered is or claims to be a specialist who is board certified, the expert witness shall be a specialist who is board certified in that specialty or claimed specialty.

**¶7**        Because the legislature did not define "specialty" in § 12-2604, the statute is ambiguous and we look to its context. *See Kent K.*, 210 Ariz. 279, ¶¶ 14-15, 110 P.3d at 1017. Several statutes regarding medical specialties refer to an "American medical specialty board." *See, e.g.*, A.R.S. §§ 20-841.04(F), 20-1057.01(E), 20-2532(A)(2), 20-2538(B); *see also Swift Transp. Co.*, 225 Ariz. 262, ¶ 11, 236 P.3d at 1212 (related statutes construed together). The American Board of Medical Specialties (ABMS) is an

4

organization consisting of twenty-four member boards and works in conjunction with the American Medical Association to recognize specialty boards. ABMS, *About ABMS Member Boards*, http://www.abms.org/About_ABMS/member_boards.aspx (last visited Feb. 14, 2012). ABMS lists pediatrics as one specialty and internal medicine as another, but does not include hematology as a specialty. *Id.* It lists pediatric hematology/oncology as a subspecialty of pediatrics and hematology as a subspecialty of internal medicine. ABMS, *ABMS Member Boards, Pediatrics*, http://www.certificationmatters.org/abms-member-boards/pediatrics.aspx (last visited Feb. 14, 2012); ABMS, *ABMS Member Boards, Internal Medicine*, http://www.certificationmatters.org/abms-member-boards/internal-medicine.aspx (last visited Feb. 14, 2012).

¶8　　　　Additionally, the American Society of Hematology's website, cited by Baker, provides as follows: "An American hematologist has trained in a subspecialty program approved by the American Board of Internal Medicine or the American Board of Pediatrics, or has acquired a comparable education in the field by alternate means, and is Board Certified (or eligible) in the subspecialty of hematology."[1] Am. Soc'y of Hematology, *Defining the American Hematologist*, http://www.hematology.org/About-ASH/1778.aspx (last visited Feb. 14, 2012). Thus, taking related statutes into account, as

---

[1] We may take judicial notice of facts "not subject to reasonable dispute" if they are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Ariz. R. Evid. 201(b); *see In re Roy L.*, 197 Ariz. 441, ¶ 20, 4 P.3d 984, 990 (App. 2000) (appellate court may take judicial notice of matters trial court could have, even if trial court did not).

5

well as the arguments of the parties, we conclude the legislature intended "specialty" to be one of the twenty-four boards established by ABMS.

¶9  In their briefs, both parties suggest the statute requires the testifying expert to be of the same subspecialty as the subject doctor.  Baker notes that one of the sponsors of § 12-2604 testified before the House of Representatives Committee on Health that the statute would mean "a physician cannot testify against another physician unless they have comparable training and certification."  H.R. Health Comm. Minutes, 47th Leg., 1st Reg. Sess. (Ariz. Mar. 23, 2005).  Although the statement of a bill's sponsor may be entitled to some weight, *Hernandez-Gomez v. Leonardo*, 185 Ariz. 509, 513, 917 P.2d 238, 242 (1996), this statement gives the court little guidance in determining the legislature's choice between requiring the same specialty or subspecialty.  As this case demonstrates, that choice involves important policy trade-offs between the depth and breadth of the expert pool and the similarity of the training.  It is the legislature's role to make policy decisions and "[w]e will not question the wisdom, necessity, or soundness of policy of legislative enactments." *In re Estate of Winn*, 225 Ariz. 275, ¶ 12, 237 P.3d 628, 630 (App. 2010).  We will not make the policy decisions associated with limiting the testifying experts to the same subspecialty when the legislature has chosen to say specialty.

¶10  Additionally, the legislature could have chosen to base a testifying expert's qualifications on the relevant injury or procedure, but instead decided to base it on the

6

training and certification of the specialist.[2]  The legislature chose the term specialty, which has an objective and verifiable meaning through reference to the other statutes. Had the legislature chosen a word or phrase without such a meaning, this court would have more leeway in interpreting the statute.  But we presume the legislature has spoken as clearly as possible.  *Samaritan Health Sys. v. Superior Court*, 194 Ariz. 284, ¶ 18, 981 P.2d 584, 589 (App. 1998).  Because it chose the word specialty rather than a less specific phrase, we must conclude it meant specialty.

¶11          Section 12-2604(A)(1) requires that the testifying expert here be "a specialist who is board certified in [Wittman's] specialty."  Based on the record, Wittman is certified by the American Board of Pediatrics in the specialty of pediatrics with a subspecialty in pediatric hematology/oncology.  Brouillard is certified by the American Board of Internal Medicine as a specialist in internal medicine with subspecialties in oncology and hematology.  Pediatrics is a different specialty than internal medicine. Therefore, under § 12-2604(A)(1), Brouillard was not board certified in the same specialty as Wittman.  *See Awsienko*, 227 Ariz. 256, ¶ 11, 257 P.3d at 177.

¶12          Baker asserts that Brouillard's training included pediatric treatment and that Brouillard would be comfortable treating pediatric patients.  He goes on to claim that § 12-2604 does not require the specialist to be certified by the same board as the defendant and that this shows the legislature intended to allow specialists from different boards to testify against each other.  But none of these arguments, even if correct,

---

[2]We are not presented with and do not decide if or in what way § 12-2604 applies when a defendant specialist is acting outside of his or her specialty.

7

undermines our reading of the statute or causes our interpretation to be repugnant to or inconsistent with legislative intent, and therefore we do not adopt them. *See Awsienko*, 227 Ariz. 256, ¶ 11, 257 P.3d at 178. If the legislature had intended to allow experts whose training included the treatment at issue to testify, we presume it would have said so. *See id.* ¶ 14 (improper for court to alter legislature's requirements).

**¶13** Baker, citing *Woodard v. Custer*, 719 N.W.2d 842, 851 n.6 (Mich. 2006), further claims that the ABMS has decided "a subspecialty constitutes a specialty." But we must determine the legislature's intent at the time of enacting the statute, not ABMS's intent the year after the statute was enacted. *See Awsienko*, 227 Ariz. 256, ¶ 11, 257 P.3d at 177. *Compare* 2005 Ariz. Sess. Laws, ch. 183, § 1, *with Woodard*, 719 N.W.2d 842. "[T]his court must presume that the legislature expressed itself in as clear a manner as possible and that it gave words their natural and obvious meanings." *Samaritan Health Sys.*, 194 Ariz. 284, ¶ 18, 981 P.2d at 589; *see also State v. Korzep*, 165 Ariz. 490, 493, 799 P.2d 831, 834 (1990) (When interpreting statute, "[w]e give words their usual and commonly understood meaning unless the legislature clearly intended a different meaning."). If the legislature had intended to require matching subspecialties, it could have said so. *See Awsienko*, 227 Ariz. 256, ¶ 14, 257 P.3d at 178. Legislatures in other states have included the term subspecialty or similar criteria in their requirements for a testifying physician. Colo. Rev. Stat. § 13-64-401; Mont. Code Ann. § 26-2-601; N.J. Stat. Ann. § 2A:53A-41; 40 Pa. Cons. Stat. § 1303.512(c)(2). Thus, we will not presume our legislature intended subspecialty when it used the word specialty. *See Canon Sch.*

*Dist. No. 50 v. W.E.S. Constr. Co.*, 177 Ariz. 526, 529-30, 869 P.2d 500, 503-04 (1994) (court would not limit legislature's use of "this section" to apply to subsection).

¶14        Baker argues extensively that seventeen-year-old Tara was not truly a pediatric patient and that Brouillard could treat patients her age. He further argues the standard of care should be the same for both Brouillard and Wittman.[3] Baker also contends the purposes of the statute are met here. Again, the legislature has chosen to require an expert to be certified in the same specialty. *See* § 12-2604. As this court stated in *Governale v. Lieberman*, 226 Ariz. 443, ¶ 18, 250 P.3d 220, 226 (App. 2011), the legislature may have imposed the same specialty requirement to reduce misunderstandings arising from "differences in training or education." Arguments concerning the overlap of the practices are more appropriately addressed to the legislature.

¶15        We acknowledge that, in *Awsienko*, Division One of this court defined "specialist" according to the dictionary rather than relying on the ABMS. 227 Ariz. 256, ¶ 9, 257 P.3d at 177. Because that court was considering only whether a testifying specialist was required to be board-certified at the time of the incident, *Awsienko*'s use of that definition is dictum. *See id.* ¶¶ 10, 18; *Alejandro v. Harrison*, 223 Ariz. 21, ¶ 12, 219 P.3d 231, 235 (App. 2009) (dictum not precedential when general statement of law unnecessary to decision). Moreover, *Awsienko* relied on the ABMS for its explanation of

---

[3]Wittman counters with evidence that the training of the two specialties were very different and caused different approaches in treating the patient. However, we need not reach that issue here.

9

board certification. 227 Ariz. 256, n.1, 257 P.3d at 177 n.1. Finally, *Awsienko*'s definition of specialist is a subjective one dependent on whether an expert's practice is limited to one area and could vary from case to case. Here the definition of specialty is at issue and our analysis refines *Awsienko*'s.

**¶16** Our specially concurring colleague proposes a logical and attractive test for determining the testifying expert's required qualifications. We do not adopt it only because we conclude that, when a specialist is acting within his or her specialty, the structure of the statute indicates the legislature intended to require the testifying expert to share that same specialty.

**¶17** Wittman contends Brouillard also fails to satisfy § 12-2604(A)(2), because he did not devote the majority of his professional time to pediatric hematology or general hematology in the year prior to Tara's death. However, because we conclude that Brouillard's certification did not satisfy § 12-2604(A)(1), we need not reach this issue.

## Anti-Abrogation

**¶18** Baker next argues the trial court erred by concluding § 12-2604 did not violate the Anti-Abrogation Clause of the Arizona Constitution. *See* Ariz. Const. art. XVIII, § 6. We review the constitutionality of a statute de novo. *Martin v. Reinstein*, 195 Ariz. 293, ¶ 16, 987 P.2d 779, 787 (App. 1999). We presume a statute is constitutional and its challenger bears a heavy burden in showing the statute's unconstitutionality. *Id.*

**¶19** Article XVIII, § 6 states, "The right of action to recover damages for injuries shall never be abrogated, and the amount recovered shall not be subject to any

10

statutory limitation." A statute violates the Anti-Abrogation Clause if "it 'completely abolishe[s]' the cause of action." *Lindsay v. Cave Creek Outfitters, L.L.C.*, 207 Ariz. 487, ¶ 21, 88 P.3d 557, 563 (App. 2003), *quoting Barrio v. San Manuel Div. Hosp. for Magma Copper Co.*, 143 Ariz. 101, 106, 692 P.2d 280, 285 (1984) (alteration in *Lindsay*). So long as reasonable alternatives remain, the legislature may regulate a right of action protected by article XVIII, § 6. *Duncan v. Scottsdale Med. Imaging, Ltd.*, 205 Ariz. 306, ¶ 30, 70 P.3d 435, 442 (2003).

**¶20** In *Governale*, this court considered whether § 12-2604 violated the Anti-Abrogation Clause. 226 Ariz. 443, ¶¶ 8-9, 250 P.3d at 224. It concluded the statute merely regulated the right of action by imposing a particular burden of proof on the parties. *Id.* ¶ 10.

**¶21** Baker attempts to distinguish *Governale* by claiming that, in his case, he has no reasonable alternatives to bringing the action because only 1800 physicians are pediatric hematologists. He asserts he contacted twenty and none would agree to testify. But the legislature has not required that a physician be board certified in the same subspecialty as the defendant. *See* § 12-2604. We will not read a greater restriction into the statute than the legislature put there. *See Awsienko*, 227 Ariz. 256, ¶ 14, 257 P.3d at 178. The undisputed facts in the present case show that Wittman claimed to be a specialist in pediatrics with a subspecialty in pediatric hematology/oncology and Brouillard is not a specialist in pediatrics. Because Baker has not demonstrated that he was unable to procure a testifying expert from the pool of specialists in pediatrics, we

11

reject his attempt to distinguish *Governale* and his claim that § 12-2604 violates the Anti-Abrogation Clause.[4]

## Other Constitutional Arguments

**¶22** Baker further contends § 12-2604 violates his equal protection and due process rights under the Arizona Constitution.[5] In *Governale*, this court expressly held to the contrary. 226 Ariz. 443, ¶ 19, 250 P.3d at 226. Baker attempts to distinguish *Governale*, again arguing his pool of experts was unduly restricted and, therefore, the statute impinges a fundamental right. But, as we have determined above, Baker has not shown the statute severely restricted his choice of experts when the correct criterion is used. Accordingly, he has failed to distinguish *Governale* and we need not repeat its analysis here.

**¶23** Baker next argues § 12-2604 violates the Arizona Constitution's prohibition against special laws. *Governale* holds that the statute "is not a forbidden special law." 226 Ariz. 443, ¶ 21, 250 P.3d at 227. Baker alleges that *Governale* "fail[ed] to consider how patients of pediatric hematologists or other sub-sub-specialties will be affected." However, as we have discussed, the statute does not require an expert be of the same subspecialty. *See* § 12-2604.

---

[4]Baker also relies on various out-of-state cases and statutes. But we see no reason to rely on these when the Arizona legislature and courts have addressed the matter.

[5]Baker additionally contends the statute violates the corresponding clauses of the United States Constitution, but provides no evidence those provisions would require a different outcome than the Arizona Constitution requires. He has thus waived any such argument. *See* Ariz. R. Civ. App. P. 13(a)(6); *Polanco v. Indus. Comm'n*, 214 Ariz. 489, n.2, 154 P.3d 391, 393-94 n.2 (App. 2007) (appellant's failure to develop and support argument waives issue on appeal).

¶24 Finally, Baker argues § 12-2604 violates the Arizona Constitution's guarantee of access to the courts, citing the Due Process, Equal Protection and Anti-Abrogation clauses.[6] But, as explained above, § 12-2604 violates none of these provisions. *Governale*, 226 Ariz. 443, ¶ 24, 250 P.3d at 227.

¶25 Section 12-2603, A.R.S., requires a person bringing a claim against a health care professional to file a preliminary expert opinion affidavit, but permits the party "a reasonable time to cure any affidavit" if the affidavit is insufficient. Similarly, we generally favor a resolution on the merits. *Cf. Addison v. Cienega, Ltd.*, 146 Ariz. 322, 323, 705 P.2d 1373, 1374 (App. 1985). Because we have defined specialty in a manner different from *Awsienko*, we reverse the trial court's grant of summary judgment. On remand Baker shall be given the opportunity to present an expert witness in compliance with this decision.

**Conclusion**

¶26 For the foregoing reasons, we vacate the trial court's grant of summary judgment in favor of Wittman, UPH, and ABOR and remand for further proceedings consistent with this opinion.

/s/ *Joseph W. Howard*
_____
JOSEPH W. HOWARD, Chief Judge

CONCURRING:

---

[6]Baker also contends *Seisinger v. Siebel*, 220 Ariz. 85, ¶ 44, 203 P.3d 483, 494 (2009), holding § 12-2604 did not violate separation of powers, "was wrongly decided." However, he acknowledges that issue "is a question for the Arizona Supreme Court."

/s/ *J. William Brammer, Jr.*

J. WILLIAM BRAMMER, JR., Judge

E C K E R S T R O M, Presiding Judge, specially concurring.

**¶27**       In this case, we must determine what the legislature intended when it required that any expert testifying "on the appropriate standard of practice or care" in a medical malpractice action must specialize "in the same specialty" as the defendant physician. A.R.S. § 12-2604(A)(1). The language of the statute itself provides little guidance on the central issues raised here: whether the term "specialty" was intended to include sub-specialties and, if not, what definition of specialty do we apply? I concur with the majority opinion to the extent it aptly resolves these difficult questions.

**¶28**       In my view, however, the majority analysis fails to address an important additional feature of § 12-2604(A)(1): that the specialty requirement is imposed only in the context of testimony regarding the defendant physician's "appropriate standard of practice or care." Because an expert witness is not allowed under our rules of evidence to testify regarding an irrelevant standard of care, *see Governale*, 226 Ariz. 443, ¶ 6, 250 P.3d at 223; *Pipher v. Loo*, 221 Ariz. 399, ¶ 16, 212 P.3d 91, 95-96 (App. 2009), and the specialty requirement is imposed only as to expert testimony regarding the "appropriate" standard, it follows that expert witnesses need not mirror those specialties of the defendant physician that are not pertinent to the relevant injury or procedure. *See*

14

*Woodard v. Custer*, 719 N.W.2d 842, 849-50 (Mich. 2006) (reaching same conclusion as to identical Michigan statute).[7]

¶29        In this case, for example, the defendant physician possessed some level of specialization in pediatrics, hematology, and oncology. On the record before us, where there is no suggestion that the deceased's condition was related to any cancer, it would make little sense to require an expert witness on the standard of care to have any expertise in oncology. And, there is a legitimate factual dispute on the record before us as to whether specialization in pediatrics would be at all pertinent to the standard of care for the treatment of a seventeen-year-old patient suffering from a blood disorder. In fact, if we concluded that an expert's specialization must be a mirror image of all medical specialties held by a defendant physician, regardless of their pertinence to the patient's injury or condition, our statute would require a testifying expert to have pediatric specialization here even if the patient had been an adult.

¶30        I cannot agree that the legislature intended such absurd potential results. *See State v. Barragan-Sierra*, 219 Ariz. 276, ¶ 17, 196 P.3d 879, 885 (App. 2008) ("We employ a common sense approach [when construing statutory language], reading the statute in terms of its stated purpose and the system of related statutes of which it forms a part, while taking care to avoid absurd results."); *see also Patches v. Indus. Comm'n*, 220 Ariz. 179, ¶ 10, 204 P.3d 437, 440 (App. 2009) ("[C]ourts must, where possible, avoid

---

[7]Because many physicians have specialization in more than one field, one of which is usually pertinent to the medical condition at issue, this is a different problem than determining whether § 12-2604 applies to those physicians operating outside any of their fields of specialization.

15

construing statutes in such a manner as to produce absurd or unconstitutional results.").

Instead, I believe the statute's focus on the "appropriate standard of care or practice" demonstrates that the legislature intended logically to limit the specialization requirement only to those specializations held by defendant physicians that are "appropriate" to the injury or condition at issue. § 12-2604(A). I therefore would instruct the trial court on remand to determine whether the defendant's specialization in pediatrics was pertinent to the standard of care or practice in treating the patient's blood condition. In all other respects, I join my colleagues' well-reasoned opinion.

/s/ _Peter J. Eckerstrom_

PETER J. ECKERSTROM, Presiding Judge