IN THE COURT OF APPEALS
STATE OF ARIZONA

FILED BY CLERK

SEP 20 2012

COURT OF APPEALS
DIVISION TWO

|  |  |  |
|---|---|---|
| MIKEL LO, M.D. and MIKEL W. LO, M.D., INC., | ) ) ) | 2 CA-SA 2012-0044 DEPARTMENT A |
| Petitioners, | ) ) ) | O P I N I O N |
| v. | ) ) | |
| HON. KENNETH LEE, Judge of the Superior Court of the State of Arizona, in and for the County of Pima, | ) ) ) ) | |
| Respondent, | ) ) | |
| and | ) ) | |
| VALERIE A. and DARRELL K. MILLS, wife and husband, | ) ) ) | |
| Real Parties in Interest. | ) ) ) | |

SPECIAL ACTION PROCEEDING

Pima County Cause No. C20105329

JURISDICTION ACCEPTED; RELIEF DENIED

Broening Oberg Woods & Wilson, PC
  By Michael J. Ryan and Michelle L. Donovan                 Phoenix
                                        Attorneys for Petitioners

Piccarreta Davis PC
  By Barry M. Davis and Amy Hernandez                           Tucson
                                   Attorneys for Real Parties in Interest

H O W A R D, Chief Judge.

¶1        Mikel Lo petitions this court for special action review of the respondent judge's order denying his motion for summary judgment in plaintiff-respondent Valerie Mills's medical malpractice action against him.[1]  He contends the respondent erred by concluding Mills's designated standard-of-care expert was not barred from testifying by A.R.S. § 12-2604(A)(1).  Because Lo has no equally plain and speedy remedy by appeal, and because this case presents an issue of first impression and of statewide importance, we accept special action jurisdiction.  Ariz. R. P. Spec. Actions 1(a); *Lear v. Fields*, 226 Ariz. 226, ¶ 6, 245 P.3d 911, 914 (App. 2011).  For the reasons that follow, however, we deny relief.

¶2        In July 2010, Mills sued Lo, a board-certified ophthalmologist with a claimed subspecialty in oculoplastic surgery, asserting he had fallen below the applicable standard of care in performing a "laser facial skin treatment" on Mills, and she had suffered numerous injuries and complications as a result.  Lo filed a motion for summary judgment and a motion to disqualify Mills's standard-of-care expert, Dr. James Chao, a board-certified plastic surgeon.  Lo argued that, pursuant to § 12-2604(A)(1), Chao was not qualified to testify against Lo because he was not a board-certified ophthalmologist and Mills, therefore, could not meet her burden of demonstrating Lo had violated the standard of care.

---

[1]This matter includes Mikel W. Lo, M.D., Inc. as a defendant and Mills's husband, Darrell, as a plaintiff.  For ease of reference, we refer to Lo and Mills as individuals throughout this decision.

¶3	The respondent judge denied Lo's motion, reasoning that, although Lo was a board-certified ophthalmologist, he was also a specialist in cosmetic plastic surgery, and that the procedure he had performed on Mills fell within the latter specialty. Thus, the respondent concluded Chao, as a board-certified plastic surgeon, was qualified to offer testimony pursuant to § 12-2604(A)(1).

¶4	Lo claims the respondent judge erred by concluding Chao was qualified under § 12-2604 to testify concerning the appropriate standard of care. "Arizona law requires a plaintiff who asserts a medical negligence claim against a health care professional to prove that the health care professional failed to comply with the applicable standard of care." *Awsienko v. Cohen*, 227 Ariz. 256, ¶ 8, 257 P.3d 175, 177 (App. 2011), *citing* A.R.S. § 12-563. Section 12-2604(A)(1) requires an expert testifying "on the appropriate standard of practice or care" to have certain qualifications:

> If the party against whom or on whose behalf the testimony is offered is or claims to be a specialist, [the expert] specializes at the time of the occurrence that is the basis for the action in the same specialty or claimed specialty as the party against whom or on whose behalf the testimony is offered. If the party against whom or on whose behalf the testimony is offered is or claims to be a specialist who is board certified, the expert witness shall be a specialist who is board certified in that specialty or claimed specialty.

¶5	In *Baker v. University Physicians Healthcare*, we determined the legislature intended the term "specialty," as used in § 12-2604(A)(1), to refer to the twenty-four specialty boards established by the American Board of Medical Specialties

3

(ABMS),[2] and did not include subspecialties. 228 Ariz. 587, ¶¶ 7-8, 13, 269 P.3d 1211, 1214-15 (App. 2012). We also concluded the legislature chose "to base a testifying expert's qualifications . . . on the training and certification of the specialist." *Id.* ¶ 10. By doing so and using the ABMS boards, the legislature gave litigants an objective and verifiable standard to determine before filing an action what qualifications an expert must have in order to testify. Thus, we concluded an expert who was board certified in the ABMS specialty of internal medicine, with a subspecialty in hematology, did not qualify under § 12-2604(A)(1) to testify against the defendant, who was board certified in the ABMS specialty of pediatrics with a subspecialty in pediatric hematology. *Id.* ¶¶ 11-12. And we noted that we did not "decide if or in what way § 12-2604 applies when a defendant specialist is acting outside of his or her specialty." *Id.* n.2.

¶6        Lo is a board-certified ophthalmologist. The ABMS describes that area of practice as follows:

> Ophthalmology is a specialty focused on the medical and surgical care of the eyes. Ophthalmologists are the only physicians medically trained to manage the complete range of the eye and vision care. They can prescribe glasses and contact lenses, dispense medications, diagnose and treat eye conditions and diseases and perform surgeries.

---

[2]*Baker* and this case address the application of § 12-2604(A)(1) and the definition of "specialty" in the context of medical doctors covered by the ABMS. We do not consider whether the term "specialty" as applied to other health care professionals would be governed by other specialty boards, such as those established by the American Osteopathic Association (AOA). *See* AOA Specialty Boards https://www.osteopathic.org/inside-aoa/development/aoa-board-certification/Pages/aoa-specialty-boards.aspx (last visited Sept. 5, 2012) (listing eighteen specialty boards for doctors of osteopathy).

ABMS Member Boards, Ophthalmology, http://www.certificationmatters.org/abms-member-boards/ophthalmology.aspx (last visited Jul. 30, 2012). This definition does not specifically include plastic surgery. Lo acknowledges plastic surgeons perform facial laser resurfacing "such as [he] performed on [Mills]," but contends that, because the procedure also is performed by ophthalmologists with Lo's particular claimed subspecialty—oculoplastic surgery, Chao is not qualified as an expert because he is not a board-certified ophthalmologist. Given that Lo is a board-certified ophthalmologist and the record supports his assertion that ophthalmologists perform this procedure, a board-certified ophthalmologist, otherwise qualified under Rule 702, Ariz. R. Evid., would qualify to testify pursuant to § 12-2604(A)(1).

¶7 But the respondent judge found that Lo also was a specialist, or at least claimed to be a specialist, in "cosmetic plastic surgery." Plastic surgery is a recognized ABMS board and "deals with the repair, reconstruction or replacement of physical defects of form or function involving the skin, musculoskeletal system, craniomaxillofacial structures, hand, extremities, breast and trunk and external genitalia or cosmetic enhancement of these areas of the body." ABMS Member Boards, Plastic Surgery, http://www.certificationmatters.org/abms-member-boards/plastic-surgery.aspx (last visited Jul. 30, 2012). "Cosmetic surgery is an essential component of plastic surgery," *id*., and there is no ABMS member board for cosmetic surgery, *see* ABMS Member Boards, http://www.certificationmatters.org/abms-member-boards.aspx (last visited Sept. 6, 2012).

¶8        Lo argues, however, that there is a distinction between cosmetic surgery and plastic surgery. At oral argument before this court he asserted he has not claimed a specialty in plastic surgery. He maintains rather that he was acting as an ophthalmologist performing cosmetic surgery. We disagree. First, the ABMS description of the practice of ophthalmology does not include cosmetic surgery, but the ABMS description of plastic surgery does. Additionally, even assuming a distinction in these circumstances is meaningful, Lo's argument is flatly contradicted by the record. In making his ruling, the respondent judge reviewed the information on Lo's internet website which claims Lo has "master[ed] the art of cosmetic surgery," including "general cosmetic surgery" and states he is "[b]oard eligible" for the "American Board of Cosmetic Surgery." The website additionally describes Lo as "one of Tucson, Arizona's leading cosmetic surgeons and facial plastic surgeons," and states that "[h]is specialties include modern techniques in cosmetic surgery, facial plastic surgery and reconstructive surgery."

¶9        Lo contended at oral argument that the contents of his website are irrelevant to determining whether he has a claimed specialty. Although we need not determine the full range of information that could establish whether a medical professional has a claimed specialty as contemplated by § 12-2604(A)(1), it clearly includes public assertions made by that professional in describing his or her areas of expertise. *See Webster's Third New Int'l Dictionary* 414 (1971) (definition of "claim" includes "to assert"); *see also Rigel Corp. v. State*, 225 Ariz. 65, ¶ 19, 234 P.3d 633, 637 (App. 2010) (court may consider common usage and dictionary definition when legislature has not

6

defined term). Based on Lo's declarations on his website, he claims to be a specialist in plastic surgery as contemplated by § 12-2604(A)(1). Because Lo has a board-certified specialty in ophthalmology and a claimed specialty in plastic surgery, we must determine what qualifications § 12-2604(A) requires an expert witness to have in that situation.

¶10 "When interpreting a statute, our goal is 'to fulfill the intent of the legislature that wrote it.'" *Baker*, 228 Ariz. 587, ¶ 5, 269 P.3d at 1213, *quoting Awsienko*, 227 Ariz. 256, ¶ 11, 257 P.3d at 177. In doing so, "[w]e first look to the statute's language and if its meaning is clear, we rely on the plain language rather than utilizing other ways of interpreting the statute." *Id.* "If a statute is ambiguous, such as when terms are undefined, 'we determine legislative intent by looking first to the text and context of the statute.'" *Id.*, *quoting Kent K. v. Bobby M.*, 210 Ariz. 279, ¶¶ 14-15, 110 P.3d 1013, 1017 (2005). And § 1-211(B), A.R.S., requires us to interpret statutes "liberally . . . to effect their objects and to promote justice."

¶11 Section 12-2604 requires "expert testimony on the appropriate standard of practice or care" for a specialty. As this court noted in *Awsienko*, the legislature intended that § 12-2604(A) "ensure that physicians testifying as experts have sufficient expertise to truly assist the fact-finder on issues of standard of care and proximate causation." 227 Ariz. 256, ¶ 13, 257 P.3d at 178. The statute does not define the term "specialty" nor does its plain language require that, when a party has multiple specialties, a testifying expert must match each of those specialties, but rather only the relevant specialty, to testify about the "appropriate standard of . . . care." § 12-2604(A)(1). To interpret § 12-

7

2604(A)(1) to require that a testifying expert match each specialty of a party with multiple specialties goes far beyond the intent of the legislature as determined in *Awsienko* and could lead to unmanageable and absurd results. *See State v. Barragan-Sierra*, 219 Ariz. 276, ¶ 17, 196 P.3d 879, 885 (App. 2008) ("We employ a common sense approach [when construing statutory language], reading the statute in terms of its stated purpose and the system of related statutes of which it forms a part, while taking care to avoid absurd results."); *see also Patches v. Indus. Comm'n*, 220 Ariz. 179, ¶ 10, 204 P.3d 437, 440 (App. 2009) ("[C]ourts must, where possible, avoid construing statutes in such a manner as to produce absurd or unconstitutional results.").

¶12        In many cases where a party has multiple specialties or claimed specialties, some of those specialties would have no relevance to the underlying claim and would not determine "the appropriate standard of care." Therefore, common sense would dictate that the testifying expert need not be trained in those specialties. And, as we noted above, we determined in *Baker* that the legislature chose "to base a testifying expert's qualifications . . . on the training and certification of the specialist." 228 Ariz. 587, ¶ 10, 269 P.3d at 1215. Additionally, our interpretation of § 12-2604 is consistent with Rule 702, Ariz. R. Evid., which requires any expert to possess "scientific, technical, or other specialized knowledge [that] will help the trier of fact to understand the evidence or to determine a fact in issue."

¶13        Moreover, a party with an uncommon or disparate set of specialties would be insulated from a malpractice claim despite the fact that one or more of the party's

specialties might be wholly unrelated to the merits of the claim. And, because § 12-2604(A)(1) encompasses claimed specialties, such an interpretation might encourage parties to claim specialties they arguably do not possess to further decrease the likelihood that a qualifying expert could be found to testify against them. Neither of these results furthers legislative intent, and both arguably are inconsistent with our constitution. Article XVIII, § 6 of our constitution ensures that "[t]he right of action to recover damages for injuries shall never be abrogated." Thus, although the legislature may regulate a right of action, "it must 'leave[] a claimant reasonable alternatives or choices which will enable him or her to bring the action. It may not, under the guise of 'regulation,' so affect the fundamental right to sue for damages as to effectively deprive the claimant of the ability to bring the action.'" *Duncan v. Scottsdale Medical Imaging, Ltd.*, 205 Ariz. 306, ¶ 30, 70 P.3d 435, 442 (2003), *quoting Barrio v. San Manuel Div. Hosp. for Magma Copper Co.*, 143 Ariz. 101, 106, 692 P.2d 280, 285 (1984) (alteration in *Duncan*). Although we do not suggest it would render the statute facially unconstitutional, to interpret § 12-2604(A)(1) to require a testifying expert to match each and every specialty claimed by a party could, in some cases, so limit a plaintiff's ability to secure an expert that his or her right of action would effectively be foreclosed. *See Baker*, 228 Ariz. 587, ¶ 21, 269 P.3d at 1216-17 (rejecting claim § 12-2604(A)(1) violates anti-abrogation clause in part because claimant "has not demonstrated that he was unable to procure a testifying expert"). We decline to interpret the statute in such a

9

way as to invite constitutional attack. *See Patches*, 220 Ariz. 179, ¶ 10, 204 P.3d at 440 (court must avoid unconstitutional result in interpreting statute).

**¶14**      Lo claims to be a plastic surgery specialist. Chao is a board-certified plastic surgery specialist. Therefore, Chao is qualified under § 12-2604 to testify concerning the appropriate standard of care.

**¶15**      As we understand his arguments, Lo further suggests that, because he is board certified in ophthalmology, the second sentence of § 12-2604(A)(1) requires that any testifying expert be board certified in ophthalmology irrespective of whatever other specialties Lo may have or claim to have. The above analysis applies to this sentence also. The second sentence of § 12-2604(A)(1) requires that the witness be board certified in a specialty in which the party is board certified. But, Lo is not board certified in plastic surgery, an ABMS specialty. Much like the statute's first sentence, to read the second sentence to require an expert also to be board certified in the same specialty in which the party is board certified, when such specialty may have no application to the appropriate standard of care, could improperly insulate the party from relevant expert testimony regarding one of his or her other applicable specialties. We will not read the statute to compel this absurd result. *See Barragan-Sierra*, 219 Ariz. 276, ¶ 17, 196 P.3d at 885; *Patches*, 220 Ariz. 179, ¶ 10, 204 P.3d at 440.

**¶16**      For the reasons stated, we conclude the respondent judge did not abuse his discretion in denying Lo's motion to disqualify Mills's expert and motion for summary judgment. *See* Ariz. R. P. Spec. Actions 3(c) (special action relief appropriate when

respondent abused discretion); *Sonoran Desert Investigators, Inc. v. Miller*, 213 Ariz. 274, ¶ 5, 141 P.3d 754, 756 (App. 2006) (denial of motion for summary judgment reviewed for abuse of discretion).  Thus, although we accept jurisdiction of this special action, we deny relief.


/s/ *Joseph W. Howard*
JOSEPH W. HOWARD, Chief Judge

CONCURRING:

/s/ *Peter J. Eckerstrom*
PETER J. ECKERSTROM, Presiding Judge


/s/ *J. William Brammer, Jr.*
J. WILLIAM BRAMMER, JR., Judge*


     *A retired judge of the Arizona Court of Appeals authorized and assigned to sit as a judge on the Court of Appeals, Division Two, pursuant to Arizona Supreme Court Order filed August 15, 2012.