NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

_____

STEVEN HARDY and MARY LOUISE HARDY, husband and wife,
*Plaintiffs/Appellants*,

*v.*

MARC GOTTLIEB, M.D., *Defendant/Appellee*.

No. 1 CA-CV 12-0631
FILED 5-6-2014

_____

Appeal from the Superior Court in Maricopa County
No. CV2007-011312
The Honorable George H. Foster, Judge

**REVERSED AND REMANDED**

_____

COUNSEL

Haralson, Miller, Pitt, Feldman & McAnally, P.L.C., Tucson
By Stanley G. Feldman and Nathan J. Fidel
*Counsel for Plaintiffs/Appellants*

Sanders & Parks, P.C., Phoenix
By Winn L. Sammons, Mandi J. Karvis, and Robin E. Burgess
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Donn Kessler delivered the decision of the Court, in which Judge Patricia K. Norris and Judge Maurice Portley joined.

---

**K E S S L E R**, Presiding Judge:

¶1        Plaintiffs/Appellants Steven Hardy and Mary Louise Hardy ("the Hardys") appeal from the superior court's summary judgment for Defendant/Appellee Dr. Marc Gottlieb ("Dr. Gottlieb").  For the following reasons, we reverse the summary judgment and remand for proceedings consistent with this decision.

**FACTUAL AND PROCEDURAL HISTORY**

¶2        In June 2007, the Hardys sued St. Joseph's Hospital and Medical Center ("St. Joseph's"), St. Joseph's wound care nurses, and Dr. Gottlieb for medical malpractice.[1]   The claims related to in-patient treatment for pressure sores that Steven Hardy, who is a quadriplegic, received at St. Joseph's in November 2005 and January 2006, and out-patient care at Banner Good Samaritan Medical Center Wound Clinic between July 2005 and March 2006.  Dr. Gottlieb, a plastic surgeon certified by the American Board of Medical Specialties ("ABMS"), treated Hardy's pressure sores during this time.  To support their claims as to causation and the applicable standard of care, the Hardys produced preliminary expert witness affidavits from Dr. Carol Hollan, an ABMS-certified plastic surgeon, and Donna G. Lockhart, a registered and certified wound ostomy and continence nurse.

¶3        In June 2009, St. Joseph's moved for summary judgment, arguing that Dr. Hollan and Nurse Lockhart did not meet the requirements for expert witness qualification under Arizona Revised Statutes ("A.R.S.") section 12-2604 (Supp. 2013).[2]  St. Jospeh's argued that

---

[1] The Hardys also sued Banner Good Samaritan Medical Center, but the hospital prevailed on an uncontested motion for summary judgment thereby ending its involvement in the matter.

[2] We cite the current versions of statutes when no changes material to this decision have since occurred.

Dr. Hollan was not a wound care specialist and Nurse Lockhart did not devote a majority of her professional time to the active clinical practice of or to the instruction of students in wound care. *See* A.R.S. § 12-2604(A)(1)-(2). The superior court granted summary judgment for St. Joseph's. This Court affirmed the summary judgment because neither Dr. Hollan nor Nurse Lockhart had devoted a majority of their professional time in the year immediately preceding Hardy's treatment to the active clinical practice of or instruction of students in wound care. *Hardy v. Catholic Healthcare West* (*Hardy I*), 1 CA-CV 09-0790, 2010 WL 5059602, at *3-4, ¶¶ 13-14 (Ariz. App. Dec. 7, 2010) (mem. decision).

**¶4** Dr. Gottlieb took no part in St. Joseph's summary judgment motion, and instead separately moved for summary judgment in January 2012, similarly arguing that Dr. Hollan was not qualified as an expert witness because she is not a wound care specialist and she did not devote a majority of her professional time in the year immediately preceding Hardy's care to the active clinical practice of wound care. Additionally, Dr. Gottlieb asserted that *Hardy I* operated as law of the case, thereby precluding the superior court from reaching a contrary conclusion as to Dr. Hollan's expert witness qualifications. The Hardys argued that Dr. Hollan was qualified because she, like Dr. Gottlieb, is an ABMS-certified plastic surgeon.

**¶5** Before the superior court ruled on Dr. Gottlieb's motion, this Court decided *Baker v. University Physicians Healthcare*, 228 Ariz. 587, 269 P.3d 1211 (App. 2012), *vacated in part*, 231 Ariz. 379, 296 P.3d 42 (2013). That case held that "specialty" for purposes of A.R.S. § 12-2604 refers to "one of the twenty-four boards established by ABMS." *Baker*, 228 Ariz. at 590, ¶ 8, 269 P.3d at 1214. Dr. Gottlieb avowed in an affidavit presented to the superior court that ABMS does not recognize or certify a specialty or subspecialty in wound care. Nevertheless, the superior court granted summary judgment in favor of Dr. Gottlieb, concluding that *Hardy I* was law of the case.

**¶6** The Hardys timely appealed. We have jurisdiction pursuant to A.R.S. § 12-2101(A)(1) (Supp. 2013).

## STANDARD OF REVIEW

**¶7** We review a grant of summary judgment *de novo*, construing "the evidence and reasonable inferences in the light most favorable to the party opposing the motion." *Andrews v. Blake*, 205 Ariz. 236, 240, ¶ 12, 69 P.3d 7, 11 (2003). Summary judgment is appropriate if there are no

genuine issues of "material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). The questions presented are whether Dr. Hollan is qualified under A.R.S. § 12-2604(A) to testify against Dr. Gottlieb and whether *Hardy I* amounts to law of the case on Dr. Hollan's qualifications to testify about wound care.

**DISCUSSION**

¶8        The superior court granted summary judgment for Dr. Gottlieb because it determined that the Hardys failed to provide a preliminary expert opinion by a *qualified* witness. *See* A.R.S. §§ 12-2603 (Supp. 2013) and -2604. To testify against a party who is or claims to be a specialist, an expert witness must share that same specialty or claimed specialty[3] and, "[d]uring the year immediately preceding the occurrence giving rise to the lawsuit," must have "devoted a majority of" his or her "professional time to either . . . [t]he active clinical practice of" or "[t]he instruction of students" in that specialty or claimed specialty.[4] A.R.S. §

---

[3] In *Baker*, the Arizona Supreme Court interpreted "specialty" to include recognized subspecialties. 231 Ariz. at 386, ¶ 23, 296 P.3d at 49. Additionally, if the party against whom the testimony is offered is board certified in that specialty, the witness must also be board certified. A.R.S. § 12-2604(A)(1).

[4] Section 12-2604 states, in relevant part:

"A. In an action alleging medical malpractice, a person shall not give expert testimony on the appropriate standard of practice or care unless the person is licensed as a health professional . . . and the person meets the following criteria:

1. If the party against whom . . . the testimony is offered is or claims to be a specialist, specializes at the time of the occurrence that is the basis for the action in the same specialty or claimed specialty . . . . If the party against whom . . . the testimony is offered is or claims to be a specialist who is board certified, the expert witness shall be a specialist who is board certified in that specialty or claimed specialty.

2. During the year immediately preceding the occurrence giving rise to the lawsuit, devoted a majority of the person's professional time to . . . :

4

12-2604(A)(1)-(2). The Hardys argue that the superior court erred in granting summary judgment for Dr. Gottlieb because *Hardy I* is not law of the case, and because wound care is not a valid specialty under these facts. We agree that the court erred in granting summary judgment.

I.      Law of the Case

**¶9**          "'[L]aw of the case' describes the judicial policy of refusing to reopen questions previously decided in the same case by the same court or a higher appellate court." *Powell-Cerkoney v. TCR-Montana Ranch Joint Venture, II*, 176 Ariz. 275, 278, 860 P.2d 1328, 1331 (App. 1993). Typically, "if an appellate court has ruled upon a legal question and remanded for further proceedings, the legal questions thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case." *Emp'rs Mut. Liab. Ins. Co. of Wis. v. Indus. Comm'n*, 115 Ariz. 439, 441, 565 P.2d 1300, 1302 (App. 1977). Because law of the case is a harsh rule, it is not strictly applied, particularly when its application "would result in a manifestly unjust decision." *Dancing Sunshines Lounge v. Indus. Comm'n*, 149 Ariz. 480, 482, 720 P.2d 81, 83 (1986). Thus, several exceptions to its application have developed:

> "[L]aw of the case" is not applied when 1) there has been a change in the essential facts or issues; 2) there has been a substantial change of evidence; 3) there has been an error in the first appellate decision so as to render it manifestly erroneous or unjust; 4) there has been a change in the applicable law; 5) the issue was not actually decided in the first decision or the decision is ambiguous; and 6) the doctrine is inapplicable if the prior appellate decision was not on the merits.

*Id.* at 483, 720 P.2d at 84. This case falls squarely into the fourth and fifth enumerated exceptions.

**¶10**          *Hardy I* did not decide whether Dr. Hollan is qualified to opine about the standard of care applicable to Dr. Gottlieb, both of whom are ABMS-certified plastic surgeons. Notably, the transcript from the summary judgment proceedings in that matter shows that the claims

---

(a) The active clinical practice of the same health profession as the defendant and, if the defendant is or claims to be a specialist, in the same specialty or claimed specialty."

against St. Joseph's related only to wound care provided by its nursing staff. Thus, the issues on appeal in *Hardy I* were not whether wound care was a valid specialty for purposes of A.R.S. § 12-2604 or whether Dr. Hollan was qualified to testify as to the standard of care applicable to Dr. Gottlieb. Instead, the issues were whether Dr. Hollan devoted a majority of her professional time to the active clinical practice of wound care *nursing* and, thus, whether she was qualified to opine about the standard of care applicable to St. Joseph's *nursing staff*. We determined that Dr. Hollan was not qualified because she had not devoted a majority of her professional time to the active clinical practice of wound care nursing, and we declined to address St. Joseph's "alternative argument that Dr. Hollan was not qualified to opine regarding the standard of care applicable to [St. Joseph's] *nurses* because she was not in the same specialty, i.e., *she was not a wound care nurse*." *Hardy I*, 1 CA-CV 09-0790, at *3 n.4, ¶ 13 (emphases added). At best, we assumed without deciding that the specialty for purposes of A.R.S. § 12-2604(A)(2)(a) (active clinical practice) was wound care nursing.

¶11 Furthermore, to the extent that *Hardy I* might have implied that wound care was a valid specialty for purposes of A.R.S. § 12-2604,[5] major changes in the law governing the determination of medical specialties makes the law of the case doctrine inapplicable here. When we decided *Hardy I*, Arizona courts had not yet interpreted the meaning of "specialty" or "claimed specialty" in A.R.S. § 12-2604. Several years later this Court decided *Baker*, which held that "specialty" refers to "one of the twenty-four boards established by ABMS." 228 Ariz. at 590, ¶ 8, 269 P.3d at 1214. Just last year, the Arizona Supreme Court vacated the portion of our decision in *Baker* that limited "specialty" to one of the twenty-four boards established by ABMS, and clarified that "'specialty' for purposes of § 12-2604 . . . refer[s] to a limited area of medicine in which a physician is or may become board certified" and includes recognized subspecialties. *Baker*, 231 Ariz. at 385-86, ¶¶ 21-24, 296 P.3d at 48-49. To constitute a specialty under *Baker*, then, certification in the area of practice must be obtainable through a certifying body, which can include but is not limited to ABMS. This legal framework did not exist at the time of *Hardy I*, nor

---

[5] We note that neither party disputed that wound care nursing was the applicable specialty. Instead, the parties argued about whether Dr. Hollan specialized in wound care nursing, whether she devoted a majority of her professional time to its practice, and whether she offered sufficient causation testimony.

did *Hardy I* analyze the issue in a similar manner. Thus, to the extent that *Hardy I* implied or assumed that wound care was a valid specialty, that determination cannot govern the issue here in light of our supreme court's decision in *Baker*.

**¶12** Accordingly, the superior court erred by concluding that *Hardy I* operated as law of the case, thereby precluding it from holding that Dr. Hollan, an ABMS-certified plastic surgeon, was qualified to testify about wound care provided by Dr. Gottlieb, another ABMS-certified plastic surgeon. The issue of the specialty between two plastic surgeons was not decided in *Hardy I*, and to the extent it was implied, it was superseded by our supreme court's decision in *Baker*.

**¶13** On appeal, the parties also argue that the superior court reached the merits of whether Dr. Hollan was qualified under A.R.S. § 12-2604 to testify against Dr. Gottlieb based on their being in the same specialty or subspecialty. As we explain below, we conclude that the court properly did not reach that issue based on the record before it.

II. Medical Expert Witness Qualification Under *Baker*

**¶14** The Hardys argue that the superior court erred by concluding that wound care is a valid specialty because neither ABMS nor any other medical body certified wound care as a specialty or subspecialty at the time of the treatment at issue. We do not reach this issue because the superior court did not and could not have so found based on the record before it. To apply the dictates of our supreme court's decision in *Baker*, we must remand this matter to the superior court for further factual development.

**¶15** When this Court decided *Baker*, the superior court had Dr. Gottlieb's motion for summary judgment under consideration. We limited "specialty" for purposes of A.R.S. § 12-2604 to the twenty-four boards established by ABMS, and did not include recognized subspecialties. *Baker*, 228 Ariz. at 590-91, ¶¶ 8-9, 269 P.3d at 1214-15. Although ABMS recognizes plastic surgery as a specialty, it does not recognize wound care as such. After the superior court granted summary judgment for Dr. Gottlieb, but before the filing of briefs in this appeal, the Arizona Supreme Court decided *Baker*, which clarified that a specialty for purposes of A.R.S. § 12-2604 is a limited area of medicine in which board certification by a medical body is obtainable, and includes recognized, certifiable subspecialties, 231 Ariz. at 385-86, ¶¶ 21-24, 296 P.3d at 48-49. Moreover, our supreme court rejected the argument that the phrase

"claimed specialty" permits a defendant physician to define his or her own specialty. *Baker*, 231 Ariz. at 386, ¶ 25, 296 P.3d at 49. Instead, "'claimed' in this context refers to situations in which a physician purports to specialize in an area that is eligible for board certification, regardless of whether the physician in fact limits his or her practice to that area." *Id.* Under *Baker*, then, when applying A.R.S. § 12-2604:

> [t]he court must initially determine if the care or treatment at issue involves the identified specialty, which may include recognized subspecialties. If it does, testifying experts must share the same specialty as the treating physician. The trial court then must determine if the treating physician is board certified within that specialty. If so, any testifying expert must also be board certified in that specialty. . . . Depending on the circumstances, the relevant specialty may be a subspecialty in which the treating physician is board certified.

*Id.* at 386-87, ¶ 27, 296 P.3d at 49-50. Alternatively, if the defendant healthcare provider is not board certified, but at the time of the treatment "purport[ed] to specialize in an area that is eligible for board certification," *id.* at 386, ¶ 25, 296 P.3d at 49, the person offered to testify against the defendant as to standard of care must likewise purport to specialize in that same area that is eligible for board certification.

¶16        The superior court properly did not reach the issue of certification. Under our decision in *Baker,* which was effective at the time of the summary judgment, Dr. Gottlieb had not shown that ABMS recognized wound care as a specialty or subspecialty. Moreover, at that time our supreme court had not yet decided *Baker,* which limited claimed specialties or subspecialties to those for which certification is obtainable through ABMS or some other recognized professional organization. Dr. Gottlieb claims on appeal that he is a member of the Council for Medical Education and Testing ("CMET"), which appears to certify wound care as a specialty. Hardy correctly points out, however, that these alleged facts were not presented to the superior court, and in any event it appears from CMET's own website that its certification process has been in place since only 2008, two years *after* Dr. Gottlieb treated Hardy.[6]

---

[6] CMET's website also states that "true physician board certification in wound care is not yet available today." *About Us*, COUNCILMET.ORG,

¶17        Given this conflict in evidence, we remand this matter to the superior court for further factual development of whether Dr. Hollan is qualified under A.R.S. § 12-2604 to opine against Dr. Gottlieb. The present record reflects that both Dr. Gottlieb and Dr. Hollan are ABMS-certified plastic surgeons, that they were so certified at the time that Dr. Gottlieb rendered the medical care at issue, and that Dr. Hollan devoted her professional time to plastic surgery for over a decade, including the year immediately preceding Hardy's treatment. Therefore, if the superior court finds that plastic surgery is the appropriate specialty because neither CMET nor any similar organization offered certification in wound care at the time Dr. Gottlieb treated Hardy, then Dr. Hollan satisfies the requirements of A.R.S. § 12-2604. If, however, the superior court finds that CMET or a similar organization did offer certification in wound care at the time that Dr. Gottlieb treated Hardy, then wound care would be a valid specialty for purposes of A.R.S. § 12-2604. Dr. Hollan admittedly does not hold herself out as a wound care specialist, nor has she ever purported to specialize in wound care. Thus, if the superior court finds that wound care is a valid specialty under *Baker* and that, at that time he treated Hardy, Dr. Gottlieb either was so certified or otherwise specialized or purported to specialize in wound care, then Dr. Hollan would not qualify. In that case, the superior court shall permit Hardy to nominate a new physician to opine against Dr. Gottlieb.

---

http://www.councilmet.org/index.php/about-us.html (last visited April 25, 2014).

**CONCLUSION**

¶**18**      For the reasons stated above, our decision in *Hardy I* is not law of the case on whether Dr. Hollan can opine against Dr. Gottlieb. Accordingly, we reverse the summary judgment for Dr. Gottlieb and remand the matter for further factual development of whether Dr. Hollan is so qualified under *Baker*.[7]



Ruth A. Willingham · Clerk of the Court

F I L E D : MJT

---

[7] On August 13, 2013, Dr. Gottlieb filed a motion to strike appendices two through five of the Hardys' opening brief. The Hardys filed a reply on September 4, 2013. We deny the motion to strike as moot because we did not consider or rely on the contested appendices in reaching our decision.