257 P.3d 175

Halina AWSIENKO, surviving spouse; Nina Awsienko, surviving child; and Oleg Awsienko, surviving child, Plaintiffs/Appellants,

v.

Robert Steven COHEN, D.O. and Jane Doe Cohen, husband and wife; David Hoelzinger, M.D. and Dominique Beatriz Hoelzinger, husband and wife, Defendants/Appellees.

No. 1 CA–CV 10–0376.

Court of Appeals of Arizona, Division 1, Department B.

May 12, 2011.

The Rosacci Law Firm, P.C. by Antonio M. Rosacci, Phoenix, Attorneys for Plaintiffs/Appellants Awsienko.

The Cavanagh Law Firm, P.A. by Mary G. Pryor, Taylor C. Young, Phoenix, Attorneys for Defendant/Appellee Cohen.

Jennings, Strouss & Salmon, P.L.C. by John J. Egbert, Frederick M. Cummings, Phoenix, Attorneys for Defendants/Appellees Hoelzinger.

## OPINION

KESSLER, Presiding Judge.

¶ 1 Plaintiffs/Appellants Halina, Nina, and Oleg Awsienko (the "Awsienkos") appeal the superior court's summary judgments in favor of Defendants/Appellees David Hoelzinger, M.D. and Robert Steven Cohen, D.O. We affirm the judgment in favor of Dr. Hoelzinger. However, we reverse the judgment in favor of Dr. Cohen because we hold that pursuant to Arizona Revised Statutes ("A.R.S.") section 12–2604(A)(1) (Supp. 2010), an expert witness testifying against a board-certified specialist in a medical malpractice action need not be board-certified in the same specialty as the defendant at the time of the underlying incident. Accordingly, we affirm in part, reverse in part and remand for further proceedings consistent with this decision.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 This case arises out of a medical malpractice and wrongful death action related to the care and treatment of Filip Awsienko ("Awsienko"). After multiple hospitalizations at several medical facilities, Awsienko suffered a cardiac arrest at Banner Desert Medical Center and died in 2006. Dr. Cohen, who is board-certified in internal medicine and nephrology, participated in Awsienko's care at Banner Desert Medical Center. Dr. Hoelzinger, who is board-certified in cardiovascular disease and interventional cardiology, also treated Awsienko. Awsienko's family filed this action against Drs. Cohen and Hoelzinger, several other treating physicians, and several hospitals, alleging medical negligence resulting in Awsienko's death.

¶ 3 The Awsienkos disclosed James Wilson, M.D., as their standard of care expert against Drs. Cohen and Hoelzinger. Dr. Wilson achieved board certification in internal medicine in 2002 and in nephrology in 2007.

¶ 4 After the discovery deadline, Drs. Cohen and Hoelzinger moved for summary judgment. They argued that Dr. Wilson did not meet the requirements of A.R.S § 12–2604(A)(1) for expert witnesses and therefore could not testify that Drs. Cohen and Hoelzinger failed to meet the applicable standard of care, thus precluding the Awsienkos from establishing a prima facie case of negligence. Dr. Hoelzinger also argued he was entitled to summary judgment because Dr. Wilson had not opined that Dr. Hoelzinger had violated the applicable standard of care or caused injury to Awsienko.

¶ 5 The Awsienkos maintained that Dr. Wilson satisfied the statutory requirements of A.R.S. § 12–2604(A)(1). They also asserted that Dr. Hoelzinger had never claimed that he was a specialist, that their cause of action against him did not arise from a violation of the standard of care related to either of his specialties, and that Dr. Wilson had opined that Dr. Hoelzinger breached the standard of care and caused Awsienko's injury. They requested, in the alternative, that if the court determined they could not rely on Dr. Wilson's opinion to establish a prima

facie case against Dr. Cohen or Dr. Hoelzinger it grant them leave to retain a new expert.

¶ 6 The court entered summary judgment for Drs. Cohen and Hoelzinger and included a determination of finality pursuant to Arizona Rule of Civil Procedure 54(b). The Awsienkos timely appealed. We have jurisdiction pursuant to A.R.S. § 12–2101(B) (2003).

## DISCUSSION

¶ 7 A court may grant summary judgment when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Ariz. R. Civ. P. 56(c)(1). We view the evidence in the light most favorable to the Awsienkos, against whom judgment was entered, and determine de novo whether there are genuine issues of material fact and whether the trial court erred in its application of the law. *Unique Equip. Co. v. TRW Vehicle Safety Sys., Inc.,* 197 Ariz. 50, 52, ¶ 5, 3 P.3d 970, 972 (App.1999).

¶ 8 Arizona law requires a plaintiff who asserts a medical negligence claim against a health care professional to prove that the health care professional failed to comply with the applicable standard of care. A.R.S. § 12–563 (2003). If the plaintiff intends to establish the standard of care through expert testimony, the expert must meet certain minimum qualifications:

> If the party against whom ... the testimony is offered is or claims to be a specialist, [the witness must] **specialize [ ] at the time of the occurrence that is the basis for the action in the same specialty or claimed specialty as the party against whom ... the testimony is offered.** If the party against whom ... the testimony is offered is or claims to be a specialist who is board-certified, **the expert witness shall be a specialist who is board-certified in that specialty or claimed specialty.**

A.R.S. § 12–2604(A) (emphasis added).

¶ 9 This case concerns the requirements applicable to a plaintiff's expert witness when, like Drs. Cohen and Hoelzinger, the defendant in a medical malpractice action is a board-certified specialist. *Dorland's Illustrated Medical Dictionary* (28th ed. 1994) defines a "specialist" as "a physician whose practice is limited to a particular branch of medicine or surgery, especially one who, by virtue of advanced training, is certified by a specialty board as being qualified to so limit his practice." *Id.* at 1551. In Arizona, a physician may specialize in a particular area of medicine without being board-certified.[1]

### A. Dr. Cohen

■ ¶ 10 Dr. Cohen moved for summary judgment on the grounds that because Dr. Wilson was not board-certified in nephrology *at the time Dr. Cohen treated Awsienko,* he is not qualified under A.R.S. section 12–2604(A) to serve as an expert witness regarding the appropriate standard of care. The Awsienkos argue the superior court erred in granting the motion because the statute does not require the expert to be board-certified at the time of the alleged malpractice. We review questions of statutory interpretation de novo. *Canon Sch. Dist. No. 50 v. W.E.S. Constr. Co.,* 177 Ariz. 526, 529, 869 P.2d 500, 503 (1994).

¶ 11 Our goal when interpreting a statute is "to fulfill the intent of the legislature that wrote it." *Bilke v. State,* 206 Ariz. 462, 464, ¶ 11, 80 P.3d 269, 271 (2003) (quoting *Hayes v. Cont'l Ins. Co.,* 178 Ariz. 264, 268, 872 P.2d 668, 672 (1994)). A statute's language is "the best and most reliable index" of its meaning.

---

1. Board-certification is not required in Arizona. However, it appears more and more physicians are seeking board-certification. *See* Arizona Medical Board, *Choosing a Doctor: What to Ask and Where to Find Reliable Information,* available at http://azmd.gov/Files/Pamphlets/Choosing_a_Doctor1.pdf. As explained by the American Board of Medical Specialties, board-certification is the "gold standard." *See* American Board of Medical Specialties, ABMS Branding, Trademark & Artwork Usage Guidelines (2009), available at http://www.abms.org/who_we_help/member_boards/moc_communications_zone/downloads/pdf/moc_usage_guidelines.pdf. Arizona statutes also recognize a difference between a specialist and a board-certified specialist. *Compare* A.R.S. § 32–1401(bb)(Supp. 2010) *with* § 1401(mm) (Supp. 2010) (it is unprofessional conduct for a physician to falsely claim to be a specialist or to falsely claim to be board-certified).

*N. Valley Emergency Specialists, L.L.C. v. Santana*, 208 Ariz. 301, 303, ¶ 9, 93 P.3d 501, 503 (2004) (citation omitted). "If the language is clear, the court must 'apply it without resorting to other methods of statutory interpretation,' unless application of the plain meaning would lead to impossible or absurd results." *Bilke*, 206 Ariz. at 464, ¶ 11, 80 P.3d at 271 (quoting *Hayes*, 178 Ariz. at 268, 872 P.2d at 672). "It is only where there is no doubt as to the intention of those who frame an amendment or statute that a court may modify, alter, or supply words that will 'obviate any repugnancy to or inconsistence with such intention,' and by so doing permit 'particular provisions' to be read or construed otherwise than 'according to their literal meaning.'" *Bd. of Supervisors v. Pratt*, 47 Ariz. 536, 542, 57 P.2d 1220, 1223 (1936) (quoting *Clark v. Boyce*, 20 Ariz. 544, 553, 185 P. 136, 140 (1919)).

¶ 12 The language of the statute does not require an expert testifying about the standard of care applicable to a board-certified defendant to have been board-certified at the time of the occurrence. *See* A.R.S. § 12–2604(A)(1). Nevertheless, Dr. Cohen urges us to read such a requirement into the statute, arguing that the first sentence of subsection (A)(1) limits the term "specialist" to those who specialized at the time of the occurrence and that limitation should then apply to the "subset" of specialists addressed in the second sentence of subsection (A)(1), those who are board-certified. We will not do so for three independent reasons.

¶ 13 First, nothing in the text of subsection (A)(1) indicates that the legislature intended the first sentence to limit the second sentence. Second, the limited statutory history available reflects that the legislature sought to ensure that physicians testifying as experts have sufficient expertise to truly assist the fact-finder on issues of standard of care and proximate causation. *E.g.*, S.B. 1036, 47th Legislature—First Regular Session, Minutes of House Committee on Health (March 23, 2005). It is plain from the first sentence of section 12–2604(A) that the legislature intended that expert testimony from a person who claimed to be a specialist only after the underlying incident would not support a malpractice action. In contrast, it is possible the legislature recognized that obtaining board-certification is a time-consuming process and it did not intend to prohibit expert testimony from a physician simply because the physician had become board-certified after the underlying incident. Indeed, it would be inconsistent with the legislative intent to prohibit a physician from testifying simply because she had become board-certified a day or a week after the underlying incident when the process of board certification stretched to a period far before that incident.

¶ 14 Third, as a matter of judicial restraint, courts will only modify statutory language when it is necessary to "obviate any repugnance to or inconsistency with" legislative intent. *Pratt*, 47 Ariz. at 542, 57 P.2d at 1223. When "the legislature has used a particular term in one place in a statute and has excluded it in another place in the same statute, a court should not read that term into the provision from which the legislature has chosen to omit it." *Ariz. Dep't of Revenue v. Gen. Motors Acceptance Corp.*, 188 Ariz. 441, 445, 937 P.2d 363, 367 (App.1996). As noted *supra*, ¶ 13, having different temporal requirements for specialists and board-certified physicians is not clearly repugnant to the legislature's intent. If the legislature had intended to require that an expert witness be board-certified at the time of the occurrence, it could have said so, as it did in the preceding sentence regarding specialists. Given that the exacting language of A.R.S. § 12–2604(A)(1) does not require an expert testifying about the applicable standard of care against a board-certified defendant to have been board-certified at the time of the occurrence, it would be improper for us as a court to construe the statute to impose such a requirement. *See Midtown Med. Group, Inc. v. State Farm Mut. Auto. Ins. Co.*, 220 Ariz. 341, 347, ¶ 22, 206 P.3d 790, 796 (App. 2008) (stating that when construing statutes, courts do not "seek to create conflicting provisions with the result that the judiciary adds

elements the legislature could have easily required but did not"); *Gen. Motors Acceptance Corp.*, 188 Ariz. at 445, 937 P.2d at 367.

¶ 15 For these reasons, the superior court erred in granting summary judgment for Dr. Cohen on the basis that Dr. Wilson was not qualified under A.R.S. § 12–2604(A)(1) because he was not board-certified at the time Dr. Cohen treated Awsienko.

### B.  Dr. Hoelzinger

¶ 16 Dr. Hoelzinger moved for summary judgment on two grounds: (1) that Dr. Wilson did not qualify as an expert witness because he did not specialize in cardiology; and (2) even if Dr. Wilson was qualified to give a standard of care opinion against Dr. Hoelzinger, he testified in his deposition that he had no criticisms of Dr. Hoelzinger's treatment of Awsienko.  The Awsienkos argue the court erred in granting the motion because Dr. Hoelzinger never asserted he was acting as a specialist at the time of the alleged malpractice and Dr. Wilson did opine that Dr. Hoelzinger violated the applicable standard of care.

¶ 17 Section 12–2604(A)(1) requires a plaintiff to present expert testimony from a board-certified specialist if the defendant is or claims to be a board-certified specialist. Dr. Hoelzinger is board-certified in cardiovascular disease and interventional cardiology.[2]  It is undisputed that Dr. Wilson is not board-certified in either cardiovascular disease or interventional cardiology.[3]

¶ 18 Nevertheless, the Awsienkos contend that Dr. Hoelzinger never asserted that he was a board-certified specialist *at the time* he treated Awsienko, and § 12–2604(A)(1) therefore does not require them to present testimony from a board-certified expert of the same specialty as Dr. Hoelzinger.

Section 12–2604 does not require that Dr. Hoelzinger claim to have been acting as a board-certified specialist when he treated Awsienko; the statutory requirements must be met simply because he is board-certified in cardiovascular disease and interventional cardiology.  Similarly, we reject the Awsienkos' argument that Dr. Wilson is qualified to render a standard of care opinion against Dr. Hoelzinger because Dr. Wilson's criticisms were unrelated to any cardiac treatment, as the statute contains no such exception.  The superior court properly granted summary judgment for Dr. Hoelzinger on this basis.

¶ 19 Moreover, Dr. Hoelzinger asserts that even if Dr. Wilson was qualified to render an expert opinion against him, we should affirm the summary judgment because Dr. Wilson did not opine that Dr. Hoelzinger violated the standard of care or caused injury to Awsienko and therefore the Awsienkos did not set forth a prima facie case of medical negligence.

¶ 20 We agree.  Dr. Hoelzinger cites several portions of Dr. Wilson's deposition testimony in which he stated that he had no criticisms of Dr. Hoelzinger's treatment of Awsienko:

Q:  Now, as it relates to the I.V. fluids, is it your opinion that Dr. Hoelzinger fell below the standard of care of a reasonable and prudent cardiologist in managing [Awsienko's] I.V. fluids?

A:  No.

Q:  Do you have any criticisms of Dr. Hoelzinger that you believe his conduct fell below the standard of care of a reasonable and prudent cardiologist?

A:  No.

Q:  So I'm not surprised at trial, there are no opinions you intend to give that David

---

**2.**  The record clearly shows that Dr. Hoelzinger disclosed his board certifications in his initial disclosure statement.

**3.**  We need not decide whether Arizona law would require that the Awsienkos offer evidence from board-certified expert(s) in both specialties. *See Woodard v. Custer*, 476 Mich. 545, 719

N.W.2d 842 (2006) (interpreting similar Michigan statute to require plaintiff's expert witness to specialize in the defendant's most relevant standard of practice, i.e., the specialty or subspecialty the defendant engaged in during the course of the alleged malpractice).

Hoelzinger fell below the standard of care in his treatment of [Awsienko]; correct?

A: Based on the records that I saw during the time of the acute event, when things might have been managed differently, I don't believe that he was consulted, so I don't believe he had the opportunity to change management, so that would be correct.

. . .

Q: Do you have any other criticisms of Dr. Hoelzinger that we haven't talked about?

A: No. From my understanding, at the time he saw the patient at 11:30, that's when the appropriate diagnostic work-up began.

Q: So in terms of whether a diagnostic work-up would have made a difference, to the extent you have any criticism as it relates to a cardiologist, those would be against Dr. [V] and not Dr. Hoelzinger?

A: I think the earlier cardiologist had the opportunity to do a more extensive work-up. That's fair.

Q: Okay. All right. Very good. So it sounds to me, Doctor, as if you have no criticisms of David Hoelzinger; am I correct?

A: That is correct.

¶ 21 In response, the Awsienkos cite another portion of Dr. Wilson's deposition in which he opined that Dr. Hoelzinger improperly administered Mylanta to Awsienko rather than performing additional testing concern-

ing Awsienko's shortness of breath, chest pain, and agitation.[4] A fair reading of this testimony reveals that Dr. Wilson did not change his opinion that he had no criticism of Dr. Hoelzinger's conduct. Rather, his criticism was that testing and diagnosis early in the morning when the Mylanta was prescribed fell below the standard of care. When Dr. Wilson understood that it was another physician, not Dr. Hoelzinger, who did that earlier testing, he again agreed he had no criticism of Dr. Hoelzinger:

Q: So in terms of whether a diagnostic work-up would have made a difference, to the extent you have any criticism as it relates to a cardiologist, those would be against Dr. [V] and not Dr. Hoelzinger?

A: I think the earlier cardiologist had the opportunity to do a more extensive work-up. That's fair.

Q: Okay. All right. Very good. So it sounds to me, Doctor, as if you have no criticisms of David Hoelzinger; am I correct?

A: That is correct. That's why I was a little bit confused on the name.

■ ¶ 22 Dr. Wilson's failure to offer sufficient evidence as to a violation of the standard of care provides an additional basis to affirm the superior court's summary judgment for Dr. Hoelzinger.[5]

## CONCLUSION

¶ 23 For the foregoing reasons, we affirm the court's summary judgment in favor of

4. It appears from the deposition transcript that there was some dispute about whether Dr. Hoelzinger was, in fact, the physician who ordered Mylanta for Awsienko. We assume for purposes of our analysis that Dr. Wilson's opinion concerning the Mylanta applies to Dr. Hoelzinger.

5. Nor did the superior court abuse its discretion in denying the Awsienkos' request for permission to substitute a new standard of care expert. The Awsienkos argue that the court should have granted that motion pursuant to A.R.S. section 12–2603(F) (Supp.2010). That section provides that if a party alleges the insufficiency of a preliminary expert opinion affidavit, the court shall allow the party a reasonable time to cure the

affidavit. The issue here is not the sufficiency of the preliminary expert affidavit. Rather, the issue is whether the trial court erred in denying a substitution of an expert after: (1) the time expired for disclosure of expert opinions; and (2) Dr. Hoelzinger deposed Dr. Wilson, relied on that deposition and moved for summary judgment on the lack of Dr. Wilson's qualifications under section 12–2401(A) and failure to show Dr. Hoelzinger fell below the standard of care. A trial court has broad discretion to deny substitution of expert witnesses. *Link v. Pima County,* 193 Ariz. 336, 338, ¶ 3, 972 P.2d 669, 671 (App. 1998). Given the record in this case, we cannot say the trial court abused that discretion.

Dr. Hoelzinger, but reverse its judgment for Dr. Cohen and remand for further proceedings consistent with this decision.

CONCURRING: DIANE M. JOHNSEN and SHELDON H. WEISBERG, Judges.