IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

BLAIR PRESTON, CHRISTY PRESTON,
and MELISSA SANSING, all natural
children of JEAN PRESTON, Deceased,
*Plaintiffs/Appellants/*
*Cross-Appellees*,

*v.*

MICHAEL AMADEI, M.D.,
*Defendant/Appellee/Cross-Appellant.*

No. 1 CA-CV 14-0222
FILED 8-27-2015

Appeal from the Superior Court in Yavapai County
No.  P1300CV201100726
The Honorable Patricia A. Trebesch, Judge

**AFFIRMED IN PART; REVERSED AND REMANDED IN PART**

COUNSEL

Roush, McCracken & Guerrero, LLP, Phoenix
By Peter A. Guerrero
*Counsel for Plaintiffs/Appellants/Cross-Appellees*

Campbell, Yost, Clare & Norell, P.C., Phoenix
By Stephen C. Yost, Kenneth W. McCain
*Counsel for Defendant/Appellee/Cross-Appellant*

**OPINION**

Judge Michael J. Brown delivered the opinion of the Court, in which Presiding Judge Maurice Portley and Judge John C. Gemmill joined.

**B R O W N**, Judge:

¶1        Blair Preston, Christy Preston, and Melissa Sansing ("Plaintiffs") appeal the trial court's summary judgment in favor of Michael Amadei, M.D., on their medical malpractice claim.  Specifically, they argue the court erred in finding they failed to disclose a qualified standard of care expert as required under Arizona Revised Statutes ("A.R.S.") section 12-2604 and, even if their expert was not qualified, the court erred by denying their request for time to disclose a new expert.  Dr. Amadei cross-appeals the court's denial of the portion of his motion for summary judgment addressing causation.  He argues Plaintiffs' claim is speculative and not supported by sufficient facts and data as required by applicable evidentiary requirements governing expert testimony.  For reasons that follow, we conclude Plaintiffs' standard of care expert was not statutorily qualified; however, Plaintiffs should have been given the opportunity to substitute an expert.  On Dr. Amadei's cross-appeal, because we hold that an expert's opinion in a medical malpractice case may be focused on the expert's experience in practicing medicine, we affirm the court's ruling denying Dr. Amadei's motion on this basis.

**BACKGROUND**

¶2        In June 2009, Jean Preston ("Ms. Preston") was involved in a motor vehicle accident.  She sustained a fractured femur and was later admitted to Kachina Point Health Care and Rehabilitation Center ("Kachina") for rehabilitation services.  At the time of her admission, Ms. Preston had longstanding cardiac issues.

¶3        On August 11, Ms. Preston experienced severe chest pain, left-hand numbness, and uncontrolled hypertension, prompting the Kachina nursing staff to ask Dr. Amadei, the facility's medical director and primary care doctor, to evaluate her.  After conducting an examination, Dr. Amadei ordered the treating nurse to administer nitroglycerin and Ms. Preston's pain and other symptoms soon abated.  Notwithstanding her symptom relief, Ms. Preston died at Kachina several hours later.  Medical examiner

Mark A. Fischione, M.D., who conducted the subsequent autopsy, determined she died from complications of congestive heart failure.

¶4        Plaintiffs sued Dr. Amadei in April 2011, alleging he was negligent in providing medical care to their mother and that such negligence caused her death.[1]  Dr. Amadei is board-certified in internal medicine.  David Lapan, M.D., Plaintiffs' standard of care expert, is board-certified in internal medicine and also in cardiology.

¶5        In June 2013, after discovery closed, Dr. Amadei sought summary judgment on the following grounds: (1) Dr. Lapan was not qualified as a standard of care expert under A.R.S. § 12-2604 because he practices in the area of cardiology, and the relevant specialty as it relates to Dr. Amadei's conduct is internal medicine; (2) Plaintiffs could not establish that any act or omission by Dr. Amadei proximately caused Ms. Preston's death; and (3) the testimony of Plaintiffs' disclosed standard of care expert was inadmissible pursuant to Arizona Rule of Evidence 702.   Dr. Amadei also filed a motion in limine requesting that the court preclude Plaintiffs from introducing evidence or arguing that Dr. Amadei's conduct fell below the standard of care or breached his contract in fulfilling his role as Kachina's medical director.  Additionally, Dr. Amadei filed a motion for sanctions, contending Plaintiffs' disclosures regarding the expected testimony of the medical examiner, Dr. Fischione, were false and misleading.

¶6        The trial court granted summary judgment in favor of Dr. Amadei, finding that the relevant specialty for evaluating Dr. Amadei's care and treatment is internal medicine, and that Dr. Lapan is a cardiologist who "does not currently practice internal medicine."  The court explained that "[i]n the year preceding the events that gave rise to this action, [Dr. Lapan] did not spend a majority of his time practicing or teaching in the specialty of internal medicine."  The court thus determined that Dr. Lapan failed to meet the statutory qualifications to be able to offer standard of care testimony.  The court also granted Dr. Amadei's motion in limine as well as the request for sanctions, concluding Plaintiffs "should have known" that the content of their Dr. Fischione disclosure "was false and misleading."  Although the court was "unable to conclude [Plaintiffs] knew the disclosure was false and misleading," the court found Plaintiffs were under a "duty to ensure the disclosure was accurate before disseminating the information,"

---

[1]        In their complaint, Plaintiffs also sued Kindred Nursing Centers West, L.L.C., dba Kachina ("Kachina").  During the course of the litigation, Kachina was dismissed after reaching a settlement with Plaintiffs.

and expressly noted that Plaintiffs failed to inquire as to whether Dr. Fischione agreed with the opinions as set forth in the disclosure until "*after* the disclosure was made *rather than before*." (Emphasis in original.) The court therefore determined Plaintiffs bore "the consequences of an erroneous disclosure" and awarded Dr. Amadei his reasonable attorneys' fees and costs "incurred by the false and misleading disclosure," totaling $3,497.50.

¶7         Plaintiffs filed a motion to substitute a new standard of care expert and requested a trial continuance. They also filed a motion for new trial, requesting that the court vacate its entry of summary judgment in favor of Dr. Amadei. The court denied the motion to substitute, reasoning that Plaintiffs made no attempt to cure the defect until after oral argument was held on Dr. Amadei's motion for summary judgment. The court also denied the motion for new trial. Plaintiffs timely appealed and Dr. Amadei cross-appealed the denial of his motion for summary judgment on causation.

## DISCUSSION

### A.      Disqualification of Expert Witness

¶8         Plaintiffs argue the trial court erred by disqualifying their standard of care expert pursuant to A.R.S. § 12-2604 and granting summary judgment in favor of Dr. Amadei on that basis. Specifically, Plaintiffs assert Dr. Lapan "is more qualified" than Dr. Amadei to treat cardiac-related chest pain, as experienced by Ms. Preston, and it would therefore "be absurd" to uphold the court's ruling that "a physician more competent, more experienced and more trained in the relevant medical issue . . . is disqualified from testifying[.]"

¶9         Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(a). We view the evidence in the light most favorable to the non-moving party and determine de novo whether there are genuine issues of material fact and whether the trial court erred in applying the law. *Awsienko v. Cohen*, 227 Ariz. 256, 258, ¶ 7 (App. 2011). We generally review a trial court's determinations on expert qualifications for an abuse of discretion, but review issues of statutory interpretation de novo. *Baker v. Univ. Physicians Healthcare*, 231 Ariz. 379, 387, ¶ 30 (2013). "This standard of review equally applies to admissibility questions in summary judgment proceedings." *Id.*

¶10        A plaintiff who asserts a medical negligence claim against a health care professional must prove that the health care professional failed to comply with the applicable standard of care.  A.R.S. § 12-563.  In doing so, and as relevant here, a plaintiff must timely disclose a standard of care expert who "is licensed as a health professional in this state or another state and . . . meets the following criteria:"

> 1. . . . If the party against whom or on whose behalf the testimony is offered is or claims to be a specialist who is board certified, the expert witness shall be a specialist who is board certified in that specialty or claimed specialty.

> 2. During the year immediately preceding the occurrence giving rise to the lawsuit, devoted a majority of the person's professional time to . . . the following:

> (a) The active clinical practice of the same health profession as the defendant and, if the defendant is or claims to be a specialist, in the same specialty or claimed specialty.

A.R.S. § 12-2604(A).  Here, the first prong of the statutory test is satisfied — both Dr. Amadei and Dr. Lapan are board-certified specialists in internal medicine.  Therefore, the narrow question before us is whether, over the course of the year at issue, Dr. Lapan devoted the majority of his professional time to an active clinical practice "in the same specialty" as Dr. Amadei.

¶11        As explained by our supreme court, the statute "is clear:  in a medical malpractice action, only physicians with comparable training and experience may provide expert testimony regarding whether the treating physician provided appropriate care."  *Baker*, 231 Ariz. at 383, ¶ 9.  Expertise in a medical specialty is relevant to the standard of care in a particular case, however, only if the care or treatment rendered involved a medical specialty.  *Id*. at 384, ¶ 12.  Accordingly, the statutory requirement that a testifying expert specialize in "the same specialty or claimed specialty" as the treating physician applies "only when the care or treatment at issue was within that specialty."  *Id*. at ¶ 14.  The term "specialty," as used in A.R.S. § 12-2604, includes both specialties and subspecialties.  *Id.* at 386, ¶ 23.

¶12        Given these considerations, a court "must initially determine if the care or treatment at issue involves the identified specialty, which may include recognized subspecialties."  *Baker*, 231 Ariz. at 386, ¶ 27.  "If it does, testifying experts must share the same specialty as the treating physician."

5

*Id.* "Because an individual cannot devote a 'majority' of his or her time to more than one specialty, . . . only the one relevant specialty need be matched." *Id.* at ¶ 28.

**¶13** It is undisputed that an internist may treat chest pain and related symptoms, among other things, and Dr. Amadei was therefore not practicing outside his internal medicine specialty when treating Ms. Preston. At the time of Ms. Preston's cardiac episode and death, and the year preceding, Dr. Lapan, like Dr. Amadei, was a board-certified internist. Unlike Dr. Amadei, however, Dr. Lapan did not have an active clinical practice in the specialty of internal medicine. Except for his occasional treatment of patients for conditions that turned out to be unrelated to cardiology, Dr. Lapan's clinical practice was limited during that time to cardiology, a distinct subspecialty Dr. Amadei neither claims nor practices.

**¶14** To qualify as a standard of care expert in this case under A.R.S. § 12-2604(A)(2), Dr. Lapan must have devoted a majority of his professional time to the active clinical practice of internal medicine. Because no evidence in this record supports such a conclusion, the trial court did not err by finding Dr. Lapan was not qualified to testify as a standard of care expert. *See Baker,* 231 Ariz. at 383, ¶ 9 (holding that "only physicians with comparable training and experience may provide expert testimony regarding whether the treating physician provided appropriate care")*; see also Awsienko*, 227 Ariz. at 260, ¶ 18 (concluding an internist was not qualified to render standard of care testimony regarding a cardiologist's treatment of a patient because cardiology is a subspecialty distinct from the specialty of internal medicine); *Woodard v. Custer*, 719 N.W.2d 842, 860 (Mich. 2006) (applying an expert witness qualification statute identical to Arizona's statute in all material respects, and concluding a physician who specialized in internal medicine but whose professional time was primarily devoted to clinical practice in the subspecialty of infectious diseases was not qualified to testify regarding the standard of care of the defendant physician who practiced "general internal medicine").[2]

---

[2] In contrast to the narrow and precise "same specialty" language in A.R.S. § 12-2604, and the corresponding Michigan statute, analogous medical expert witness qualification statutes in some other states provide greater flexibility. For example, a Virginia statute permits experts who "had active clinical practice in either the defendant's specialty or a related field of medicine" and a similar North Carolina statute allows experts who specialize in the same or "a similar" specialty. As a result, these statutes

### B. Motion to Substitute

¶15 Plaintiffs argue that even if Dr. Lapan was properly disqualified from testifying, the trial court erred by denying their motion to substitute a standard of care expert. We will not disturb a court's ruling on discovery and disclosure matters absent an abuse of discretion. *Link v. Pima County*, 193 Ariz. 336, 338, ¶ 3 (App. 1998). A court abuses its discretion when it commits an error of law in the process of reaching a discretionary decision. *Grant v. Ariz. Pub. Serv. Co.*, 133 Ariz. 434, 456 (1982).

¶16 In his preliminary expert opinion affidavit, disclosed in July 2011, Dr. Lapan avowed he was board-certified in both internal medicine and cardiology and stated that he practices "these specialties." On March 4, 2013, defense counsel deposed Dr. Lapan and elicited testimony that Dr. Lapan's clinical practice is limited solely to cardiology. On March 29, discovery closed. On June 3, Dr. Amadei filed his motion for summary judgment. On August 1, the trial court held oral argument on the motion for summary judgment and, by minute entry dated the same day, granted the motion in part, finding that Dr. Lapan was not qualified under A.R.S. § 12-2604 as an expert witness. Plaintiffs filed their motion to substitute an expert on August 5, which the court later denied, finding their attempt to cure the defect was untimely.

¶17 Section 12-2603 sets forth the requirements for preliminary expert opinion affidavit disclosures in medical malpractice cases and the procedural framework for dealing with deficient affidavits. Subsection (F) states that "[u]pon any allegation of insufficiency of the affidavit, the court *shall* allow any party a reasonable time to cure any affidavit, if necessary." (Emphasis added.)

¶18 As explained in *Sanchez v. Old Pueblo Anesthesia, P.C.*, 218 Ariz. 317, 323, ¶ 20 (App. 2008), A.R.S. § 12-2603 "erects an orderly

---

may, in some circumstances, allow for an expert witness who has specialized in the same specialty as the defendant physician, but who practices in a discrete subspecialty. *See Edwards v. Wall*, 542 S.E.2d 258, 263 (N.C. App. 2001) (determining a physician who practiced in the subspecialty of pediatric gastroenterology could provide expert testimony regarding the defendant physician's "similar" specialty of general pediatrics); *Sami v. Varn*, 535 S.E.2d 172, 174-75 (Va. 2000) (concluding a physician who practiced in the specialty of obstetrics-gynecology could provide expert testimony regarding the defendant physician's "related field" of emergency medicine).

procedure by which the respective parties can litigate what expert witness testimony will be necessary and what experts must therefore be disclosed—and it does not contemplate dismissal with prejudice as a sanction for a deficient preliminary affidavit." In *Sanchez*, the plaintiffs had timely disclosed the affidavit of an orthopedic surgeon, but failed to disclose an anesthesiologist. *Id.* at 319, ¶ 4. After the disclosure deadline had expired, one of the defendants moved to dismiss the medical malpractice complaint for failure to comply with A.R.S. § 12-2604. *Id.* The court granted the motion to dismiss with prejudice and the plaintiffs appealed. *Id.* This court upheld the trial court's determination that the plaintiffs' standard of care expert disclosures were deficient. *Id.* at 322, ¶ 17. We further held, however, that the court's dismissal of the complaint with prejudice was contrary to A.R.S. § 12-2603. In reaching this conclusion, we noted that the plaintiffs had provided their deficient affidavit well within the disclosure deadline, yet the defendants did not directly challenge the sufficiency of the affidavit within the discovery period, but instead filed their motion for dismissal after the discovery period expired. *Id.* at 324, ¶ 24. We concluded that the sanction of "dismissal with prejudice . . . was not authorized" under A.R.S. § 12-2603. *Id.* at ¶ 25.

**¶19** Similar to the facts in *Sanchez*, Plaintiffs timely disclosed Dr. Lapan's affidavit well within the discovery period. Dr. Amadei did not raise any direct challenge to the sufficiency of the affidavit, even upon conducting Dr. Lapan's deposition, and instead filed a motion for summary judgment after the disclosure deadline had expired. Under these circumstances, and consistent with the purpose of A.R.S. § 12-2603, we conclude the trial court should have allowed Plaintiffs additional time to substitute another standard of care expert. *See Sanchez*, 218 Ariz. at 324, ¶ 25; *see also Baker v. Univer. Physicians Healthcare*, 228 Ariz. 587, 593, ¶ 25 (App. 2012) (directing the trial court on remand to allow the plaintiff an opportunity to present a substitute expert), *vacated on other grounds, Baker*, 231 Ariz. at 390, ¶ 53.

### C. Motion in Limine

**¶20** Plaintiffs argue the trial court erred by granting Dr. Amadei's motion in limine to preclude the introduction of evidence or argument that he fell below the standard of care as medical director or breached his contract in fulfilling his role as medical director. We review a court's decision on a motion in limine for an abuse of discretion. *Warner v. Southwest Desert Images, LLC*, 218 Ariz. 121, 133, ¶ 33 (App. 2008).

¶21         In his motion, Dr. Amadei asserted that "any duty" imposed by his role as medical director was one created by his employment contract with Kachina and therefore any violation of such a duty would be a breach of contract with Kachina, not a tort against Plaintiffs. Dr. Amadei further argued that no standard of care expert had been disclosed to testify regarding the duties of a medical director. Plaintiffs responded that Dr. Lapan would testify that a treating physician should involve the family to persuade a patient to agree to emergency care if the patient has refused such treatment. In granting Dr. Amadei's motion in limine, the court found "that the role of Dr. Amadei as Medical Director is irrelevant except as a foundation as to how Dr. Amadei became Ms. Preston's primary care physician."

¶22         In their reply brief, Plaintiffs argue they have standing as third-party beneficiaries to raise a claim regarding Dr. Amadei's alleged breach of his employment contract with Kachina. Generally, we do not address arguments raised for the first time in a reply brief. *Nelson v. Rice*, 198 Ariz. 563, 567 n.3, ¶ 11 (App. 2000). Moreover, even applying an expansive reading of Plaintiffs' complaint, it does not frame a breach of contract claim. Instead, Plaintiffs' single claim, as alleged in their complaint, is that Dr. Amadei was "negligent in that [he] failed to exercise that degree of care, skill, and learning expected of reasonable and prudent health care providers in the profession . . . acting in the same or under similar circumstances."

¶23         The negligence claim asserted in the complaint could allow for expert testimony that the standard of care for Dr. Amadei, as a treating physician, required him to apprise the family of developments and include them in the treatment plan, but it does not encompass a breach of contract claim relating to his role as the medical director. Furthermore, as noted by Dr. Amadei, Plaintiffs have failed to disclose any expert witness to testify regarding the standard of care owed by a person acting as a medical director, distinct from the role of a treating physician. Therefore, the trial court did not abuse its discretion by granting Dr. Amadei's motion in limine to exclude evidence that he violated his employment contract with Kachina or fell below the standard of care of a medical director.

D.      Sanction for Disclosure Violation

¶24         Plaintiffs contend the trial court erred by awarding attorneys' fees as a sanction based on their "false and misleading" disclosures regarding Dr. Fischione's expected trial testimony. Specifically, Plaintiffs argue the court erred "by finding that [Plaintiffs'] counsel's conduct was

intentional and that he prepared the 'misleading' disclosure with the intent to deceive" and gain "an advantage in the lawsuit." We will affirm a court's ruling on a motion for sanctions absent an abuse of discretion. *Taeger v. Catholic Family and Comm'y Servs.*, 196 Ariz. 285, 295, ¶ 34 (App. 1999).

¶25        Both parties disclosed Dr. Fischione as an expert to testify at trial. On August 24, 2011, Plaintiffs served their initial disclosure statement, which stated, generally, that Dr. Fischione was expected to testify consistent with his autopsy report. Plaintiffs' attorney met with Dr. Fischione on July 26, 2012 and questioned him regarding his expected trial testimony. Shortly before the October 5, 2012 disclosure deadline, Plaintiffs' attorney served a supplemental disclosure statement, revising the prior disclosures regarding Dr. Fischione's expected testimony, without presenting the prepared disclosures to Dr. Fischione for approval. The supplemental disclosure stated, in relevant part:

> Dr. Fischione performed the autopsy on Jean Preston. . . . In addition to testifying consistent with the autopsy report he prepared, Dr. Fischione will testify as follows.
>
> There is nothing inconsistent in his findings in his report of the autopsy of Jean Preston with the fact that she had had an acute cardiac event which consisted of *ischemia* the day before she died. Her symptoms of 10/10 chest pain and numbness were indicative of the development of arrhythmias and that, in the end, is what she died from. . . . She died because her heart developed arrhythmias. She had a physiological mechanism (arrhythmias) which caused her death. *She did not die from congestive heart failure.* Her cause of death was arrhythmias.
>
> Dr. Fishione will also testify that there is nothing inconsistent in his report which would contradict the fact had Jean Preston been taken to the emergency room when she displayed cardiac symptoms, or shortly thereafter, she would have survived.

(Emphasis added.)

¶26        Although counsel for Plaintiffs stated he mailed a letter and a copy of the disclosure to Dr. Fischione on October 10, 2012, at his subsequent deposition, Dr. Fischione stated he never received the mailing. Dr. Fischione addressed Plaintiff's supplemental disclosure as follows: "I don't know where this came from . . . why would I say on the death

certificate, as well as on my autopsy report, that she died of congestive heart failure, and then put she did not die from congestive heart failure. And besides that, her cause of death was an arrhythmia. That's not a cause of death, that's a mechanism of death." Dr. Fischione further testified that Ms. Preston's heart problems "relate[d] to an arrhythmia, not ischemia, but an arrhythmia . . . we've already established that there's no ischemia here. . . there's no evidence of acute ischemia[.]"

¶27    After conducting Dr. Fischione's deposition, Dr. Amadei filed a motion for sanctions, asserting Plaintiffs' "false and misleading disclosure regarding Dr. Fischione's purported opinion necessitated" an additional disclosure from Dr. Amadei. In addition, Dr. Amadei argued he was compelled to conduct additional research on the governing statutes, regulations, and Medical Examiner's Handbook protocols that would need to be followed should a medical examiner opine contrary to the official autopsy report and death certificate.

¶28    Arizona Rule of Civil Procedure 37(c) provides, in relevant part:

> A party or attorney who makes a disclosure pursuant to Rule 26.1 that the party or attorney knew or should have known was inaccurate or incomplete and thereby causes an opposing party to engage in investigation or discovery, shall be ordered by the court to reimburse the opposing party for the cost, including attorney's fees of such investigation or discovery. In addition to or in lieu of these sanctions, the court on motion of a party or on the court's own motion, and after affording an opportunity to be heard, may impose other appropriate sanctions.

¶29    After oral argument on the motion for sanctions, the trial court found Plaintiffs "should have known" their supplemental disclosure, which was inconsistent with the death certificate and official autopsy report, was "false and misleading." The court also found that the false disclosure "caused [Dr. Amadei] to engage in additional investigation and discovery." Contrary to Plaintiffs' representations on appeal, the court specifically found it was "unable to conclude [Plaintiffs] knew the disclosure was false and misleading." Instead, the court found they "should have known," explaining they "were under a duty to ensure the disclosure was accurate before disseminating the information, rather than after the fact." The record supports the court's findings and thus the court

did not abuse its discretion in ordering payment of attorneys' fees as a sanction.

### E.     Denial of Motion for Summary Judgment on Alternative Grounds

¶30     On cross-appeal, Dr. Amadei argues the trial court erred by denying his motion for summary judgment on the alternative basis that Plaintiffs' causation theory was too speculative and wholly reliant on expert testimony that was inadmissible pursuant to Rule 702.  We address the cross-appeal because, if the court erred in denying Dr. Amadei's motion for summary judgment on causation, Plaintiffs' malpractice claim would fail as a matter of law.  Stated differently, if summary judgment regarding causation was proper, then Plaintiffs' motion to substitute a new expert would necessarily be denied as moot.

¶31     First, Dr. Amadei contends Plaintiffs' causation theory is based on the unsupported speculation that, had Kachina staff fully and properly apprised Blair Preston of his mother's condition, he would have gone to Kachina and convinced Ms. Preston "to go to the emergency room." In support of his motion for summary judgment, Dr. Amadei presented evidence that Ms. Preston was resistant to medical treatment and repeatedly failed to follow the advice of her physicians, and argued she therefore would have refused to be transported to the hospital even if her family was made fully aware of her condition and had attempted to persuade her that hospitalization was necessary.  Plaintiffs, on the other hand, presented evidence that Blair Preston, on several occasions, was able to convince his mother to comply with the directions and recommendations of her treating physicians, notwithstanding her initial reluctance or outright refusal.  Because the parties presented conflicting evidence on Ms. Preston's compliance with medical recommendations, we cannot say the trial court erred by concluding that whether Ms. Preston would have agreed to be hospitalized, had her family been fully notified of her initial cardiac episode, was a contested issue of material fact appropriate for a jury.  *See Barrett v. Harris*, 207 Ariz. 374, 378, ¶ 12 (App. 2004) (explaining "[c]ausation is generally a question of fact for the jury").

¶32     Dr. Amadei's remaining challenges are governed by Rule 702, which states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

¶33        Aside from his A.R.S. § 12-2604 argument, addressed at ¶¶ 8-14 above, Dr. Amadei does not dispute that Dr. Lapan, given his education, credentials and experience, qualifies as an expert for purposes of Rule 702. Instead, he contends that Dr. Lapan could not opine as to whether (1) Ms. Preston would likely have been admitted to a hospital for heart monitoring, had she been persuaded to be transported by her children; and (2) the hospital's monitoring and treatment would have made her survival probable. Specifically, Dr. Amadei argues that, applying Rule 702(b), such opinion testimony is inadmissible absent supporting facts or data, such as peer-reviewed medical literature, which Dr. Lapan failed to provide.

¶34        Rule 702, amended in 2012, is identical to the corresponding federal rule. Ariz. R. Evid. 702 cmt. to 2012 amend. We therefore consider federal court decisions interpreting the federal rule as persuasive authority for interpreting our state rule. *See Ariz. State Hosp. v. Klein*, 231 Ariz. 467, 473, ¶ 26 (App. 2013).

¶35        In interpreting the federal rule, the United States Supreme Court explained that Rule 702 "relax[es]" the "usual requirement" of "firsthand knowledge or observation," but is premised on the "assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 (1993). Thus, the essential inquiry under the rule is "whether particular expert testimony is reliable" and trial courts should consider the Rule 702 factors when "they are reasonable measures of the reliability of expert testimony." *Kumho Tire Co., Ltd v. Carmichael*, 526 U.S. 137, 153 (1999).

¶36        Accordingly, when applying Rule 702, "trial courts should serve as gatekeepers in assuring that proposed expert testimony is reliable and thus helpful to the jury's determination of facts at issue." Ariz. R. Evid. 702 cmt. to 2012 amend. The court's role as gatekeeper, however, does not

supplant "traditional jury determinations of credibility and the weight to be afforded otherwise admissible testimony." *Id.* Moreover, Rule 702 does not prohibit "the testimony of experience-based experts." *Id*.; *Sandretto v. Payson Healthcare Mgmt., Inc.*, 234 Ariz. 351, 357, ¶ 14 (App. 2014) (citing the advisory committee note to Federal Rule 702: "Nothing in this amendment is intended to suggest that experience alone—or experience in conjunction with other knowledge, skill, training or education—may not provide a sufficient foundation for expert testimony").

¶37        Given these principles, Rule 702 does not prevent an expert from relying on his or her own years of first-hand experience in a medical practice to formulate opinions as to the probable treatment a patient would receive and the likely outcome. *See Sandretto*, 234 Ariz. at 357, ¶ 14; *see also State v. Delgado*, 232 Ariz. 182, 187, ¶ 15 (App. 2013) (holding a medical expert may rely on his medical experience, including "self-reported patient histories," and "the possibility of inaccuracies [with respect to patient histories] may be explored on cross-examination"); *McMurty v. Weatherford Hotel, Inc.*, 231 Ariz. 244, 251, ¶¶ 16-17 (App. 2013) (explaining Rule 702 does not preclude the testimony of experience-based experts; cross-examination allows the opposing party to question the reliability and general application of the expert's experience and knowledge). The record reflects that Dr. Lapan became board-certified in internal medicine in 1977 and board-certified in cardiovascular disease in 1991, has practiced in the specialized field of cardiology for thirty-three years and treats, on average, one hundred patients per week. Dr. Amedei has neither challenged Dr. Lapan's qualifications nor explained how the comment to Rule 702, permitting experience-based opinion testimony, is inapplicable here. Therefore, the trial court did not abuse its discretion by finding Dr. Lapan's extensive practice experience provided sufficient foundation for his opinions, and denying Dr. Amadei's motion for summary judgment on this basis.

## CONCLUSION

¶38 We affirm the trial court's rulings disqualifying Dr. Lapan as a standard of care expert witness, granting Dr. Amadei's motion in limine, imposing sanctions for the disclosure violation, and denying Dr. Amadei's motion for summary judgment on the alternative basis that Plaintiffs' causation theory was too speculative and their expert's proffered testimony failed to satisfy Rule 702(b). We reverse, however, the court's denial of Plaintiffs' request to substitute a standard of care expert witness and remand for proceedings consistent with this decision.



Ruth A. Willingham · Clerk of the Court
FILED: ama