NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

LEXON INSURANCE COMPANY, a Texas corporation,

*Plaintiff/Appellee*,

*v.*

VALLEY SPRINGS ESTATES, LLC, an Arizona limited liability company; JAMES LEO CROWLEY; LJC DEVELOPMENT, LLC, an Arizona limited liability company; and CEDAR RIDGE INVESTMENTS, LLC, an Arizona limited liability company, *Defendants/Appellants*.

No. 1 CA-CV 16-0096
FILED 7-13-2017

Appeal from the Superior Court in Coconino County
No. S0300CV201300153
The Honorable Jacqueline Hatch, Judge

**AFFIRMED**

COUNSEL

Jennings, Haug & Cunningham, L.L.P., Phoenix
By Matthew H. Sloan, Robert J. Lamb
*Counsel for Plaintiff/Appellee*

Aspey, Watkins & Diesel, P.L.L.C., Flagstaff
By Whitney Cunningham, Colleen Maring, Kathryn G. Mahady
*Counsel for Defendants/Appellants*

_____

**MEMORANDUM DECISION**

Judge Jon W. Thompson delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Lawrence F. Winthrop joined.

_____

**T H O M P S O N**, Judge:

¶1             Valley Springs Estates, LLC (Valley Springs), James Leo Crowley, LJC Development, LLC (LJC), and Cedar Ridge Investments, LLC (Cedar Ridge) (appellants) appeal from the trial court's judgment in favor of appellee Lexon  Insurance Company (Lexon) after a jury trial, and from the court's denial of their motion for judgment as a matter of law.  For the following reasons, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

¶2             Appellants are real estate developers and investors. Sometime in 2006 or 2007, appellants decided to develop two residential subdivisions--Valley Springs in Mohave County and Cedar Ridge in the City of Flagstaff.  In 2007, appellants asked Mahoney Group Insurance Agency (Mahoney Group) to find a surety to provide subdivision performance bonds for both projects.  Mahoney Group took the bonds to Lexon, and Lexon agreed to issue the bonds.

¶3             In March 2007, appellants signed a general agreement of indemnity (GAI) for Valley Springs, and in July 2007 appellants signed a GAI for Cedar Ridge. Both GAIs contained the following provision:

> The indemnitors will pay to [Lexon] . . . premiums and charges at the rates, and at the times specified in respect to each such bond in [Lexon's] schedule of rates, which, with any additions, or amendments thereto, is by reference made a part hereof, and will continue to pay the same where such premium is annual, until the Company shall be discharged and released from any and all liability and responsibility upon and from each such bond or matters arising therefrom . . . .

Lexon's schedule of rates provided, in relevant part:

**G. Subdivision Bonds**

**Specialty Rates: <u>Rate per M</u>**

$24.00/M/Annum of cost of improvements or bond penalty

$48.00/M/Biennium of cost of improvements or bond penalty

1.  The above rates are charged on the cost of improvements or bond penalty, whichever is higher.

2.  Premium is charged on an annual basis. Premium is considered fully earned in the initial term. Renewals will be charged at the same rates on the remaining Bond Penalty if reduced by the Obligee and fully earned in the first renewal term. Pro-rated return premiums will be issued if the work is completed in the second renewal term, subject to the minimum annual earned premium, and the Surety has been released of liability by the Obligee.[1]

The performance bond for Valley Springs was in the amount (or penal sum) of $2,525,105.66 and the performance bond for Cedar Ridge was in the amount of $971,463.60. Appellants paid a two percent premium for each bond at the time they were issued.[2] The premium for the Valley Springs bond was $50,502 and the premium for the Cedar Ridge bond was $19,429. Mahoney Group received a commission equal to twenty-five percent of each premium.

---

[1] In this case Mohave County and City of Flagstaff are the obligees and Lexon is the surety. The only obligation an obligee has under a subdivision bond is to release and discharge the bond after work is finished.

[2] Lexon's underwriter, Gregory Semrow, testified that he used Lexon's schedule of rates and decided that appellants would pay Lexon's specialty rate for subdivision bonds because appellants did not have an established relationship with Lexon, but that he discounted the specialty rate to 2 percent of the bond penalty instead of 2.4 percent ($20 per thousand dollars per year) because appellants' financial statements were favorable and Lexon's risk was therefore lower.

¶4        Neither project was completed within a year.  Because some work had been completed at Valley Springs, appellants successfully got Mohave County to reduce the amount of the Valley Springs bond to $1,984,230.82, and Lexon issued an amended bond.  Mahoney Group sent an invoice to appellants for a second annual premium on the Valley Springs bond for $39,685, a reduced amount in accordance with the lowered bond amount.  Appellants paid that amount in June 2008.  Appellants paid a second two percent premium of $19,429 on the Cedar Ridge bond in August 2008.

¶5        After 2008, appellants stopped paying annual premiums to Lexon for either project.[3]  Lexon remained liable on the bonds, which continued to "auto-renew" annually.[4]  The Cedar Ridge project was not completed until 2014.  In September 2014, the City of Flagstaff released Lexon from liability under the bond.  At the time of trial, Valley Springs had not been completed.

¶6        In February 2013, Lexon filed a complaint in superior court seeking contract damages from appellants[5] for the unpaid premiums and attorneys' fees.  Lexon filed a motion for summary judgment in June 2014.  Appellants filed a cross-motion for summary judgment, and the trial court denied both motions, finding there were genuine issues of material fact.  In October 2014, appellants filed an amended answer and counterclaim seeking a refund of the premiums they paid Lexon in 2008.  Appellants filed another motion for summary judgment in May 2015.  Lexon filed a cross-motion for summary judgment.  After oral argument, the court denied both motions for summary judgment.  The court found there were genuine issues of material fact and that the terms of the contract were ambiguous.

---

[3] In 2009, Lexon took over the Valley Springs and Cedar Ridge accounts from Mahoney Group and began attempting to collect its renewal premiums.

[4] A subdivision bond cannot lapse and remains in effect until the obligee (here Mohave County or City of Flagstaff) releases it.

[5] Lexon also sued other indemnitors who have since been dismissed from the case.

¶7 After a four-day jury trial[6], the jury found in favor of Lexon on all counts and in favor of Lexon on appellants' counterclaim, and awarded Lexon $297,274.32. Appellants filed motions for a new trial and for judgment as a matter of law, which the trial court denied. The court entered a final judgment in favor of Lexon in May 2016. Appellants timely appealed. We have jurisdiction pursuant to Arizona Revised Statues (A.R.S.) sections 12-120.21(A)(1) (2016), -2101(A)(1) (2016).

## DISCUSSION

¶8 Appellants raise three issues on appeal: 1) whether the trial court erred by refusing to grant their motion for judgment as a matter of law following the jury's verdict in favor of Lexon; 2) whether the trial court abused its discretion by permitting Lexon to admit into evidence the schedule of rates it disclosed seven months before trial but subsequent to the parties' discovery deadline; and 3) whether the trial court abused its discretion by allowing Lexon to present improper expert opinion testimony.

### A. Denial of Motion for Judgment as a Matter of Law

¶9 Appellants first argue that the trial court erred by refusing to grant them judgment as a matter of law following the jury's verdict. (OB at 34). "We review de novo whether a trial court should have granted a judgment as a matter of law." *A Tumbling -T Ranches v. Flood Control Dist. of Maricopa Cty.*, 222 Ariz. 515, 524, ¶ 14, 217 P.3d 1220, 1229 (App. 2009) (citations omitted). "A motion for [judgment as a matter of law] should be granted 'if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense.'" *Id.* (quoting *Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990)). We "view 'the evidence in a light most favorable to upholding the jury verdict' and will affirm 'if any substantial evidence exists permitting reasonable person to reach such a result.'" *Id.* (quoting *Hutcherson v. City of Phoenix*, 192 Ariz. 51, 53, ¶ 13, 961 P.2d 449, 451 (1998)). '[T]he interpretation of a contract is a question of law or at most, a mixed question of law and fact . . . ." *United Cal. Bank v. Prudential Ins. Co. of Am.*, 140 Ariz. 238, 257, 681 P.2d 390, 409 (App. 1983).

---

[6] The sole issue before the jury was whether premiums on the bonds were due annually.

¶10        Appellants argue that the schedule of rates was not and could not have been incorporated by reference into the parties' contract. To incorporate a document into a contract by reference, "[t]he reference must be clear and unequivocal and must be called to the attention of the other party, he must consent hereto, and the *terms* of the incorporated document must be known or easily available to the contracting parties. . . ." *Id.* at 268, 681 P.2d at 420 (citing 17A C.J.S. *Contracts* § 299 at 136 (1963)) (emphasis added). Although it is not necessary that a contract specifically state that another document is "'incorporated by this reference herein,' the context in which the reference is made must make clear that the writing is part of the contract." *Id.* Physical attachment of the document is not necessary. *Weatherguard Roofing Co., v. D.R. Ward Const. Co.*, 214 Ariz. 344, 347, ¶ 10, 152 P.3d 1227, 1230 (App. 2007) (citation omitted).

¶11        Appellants agree that the GAIs' references to Lexon's schedule of rates are clear and unequivocal. However, they argue that 1) they could not have consented to the terms of the schedule of rates because the schedule of rates was not "known and easily available" to them, and 2) the reference to the schedule of rates was never called to their attention. Thus, appellants argue, no substantial evidence "would permit any reasonable person to find . . . three of the four elements required for the (schedule of rates) to have been incorporated by reference."

¶12        We disagree. Appellants agreed to be bound by the terms of the GAIs, which clearly stated that appellants would pay Lexon "premiums and charges at the rates, and at the times specified in respect to each such bond in [Lexon's] schedule of rates, which, with any additions, or amendments thereto, is by reference made a part hereof. . .." LJC's owner, John Crowley, testified that he reviewed the GAIs before signing them and was aware that they referenced a schedule of rates.[7] David Hickman at Mahoney Group testified that Lexon quoted a premium rate of two percent per year for the two subdivision bonds and that he orally communicated Lexon's premiums to John Crowley. Gregory Semrow, Lexon's underwriter, testified that he set the premiums at two percent per year, he communicated the premiums to Mahoney Group, and that no one ever asked him to provide the schedule of rates. Thus, there was substantial evidence that the terms of the schedule of rates were communicated to appellants, or easily available to them at the time they entered into the

---

[7] Crowley testified that he asked David Hickman for a copy of the schedule of rates but was not provided with a copy. He also testified that he was not aware the premiums would be charged annually, even though, as noted supra, he paid second annual premiums on both bonds.

contract with Lexon. *See Weatherguard*, 214 Ariz. at 346, ¶ 8, 152 P.3d at 1229.

¶13        Because sufficient evidence supported the jury's verdict, the trial court did not err in denying appellants' motion for judgment as a matter of law.

## B.   Admission of the Schedule of Rates into Evidence

¶14        In June 2015, Lexon's attorneys found a document entitled "schedule of rates" and disclosed the document to appellants in its third supplemental disclosure statement.  The disclosure was made after the parties' agreed-upon April 30, 2015 discovery deadline.  Appellants filed a motion to strike the disclosure.  The trial court denied the motion to strike, noting that there was "no evidence that [Lexon] intentionally held back the 'rate schedule,'" and that "[b]oth sides have a duty to continue to disclose." Appellants did not seek to conduct any additional discovery.  In November 2015, appellants filed a motion in limine requesting that the schedule of rates be excluded, and the trial court denied the motion in limine.

¶15        We review the trial court's rulings on discovery and disclosure matters for an abuse of discretion.  *Preston v. Amadei*, 238 Ariz. 124, 130, ¶ 15, 357 P.3d 159, 165 (App. 2015) (citation omitted).  Appellants argue that 1) Lexon never sought leave of the court by motion and supporting affidavit as required by Arizona Rule of Civil Procedure 37(c)(2) (Rule 37(c)(2)) to extend its time for disclosure, and 2)  Rule 37(c) required exclusion of the schedule of rates because the untimely disclosure was neither harmless nor supported by good cause.

¶16        The applicable version of Rule 37(c)[8] provides, in relevant part:

> (1) A party who fails to timely disclose information required by Rule 26.1 shall not, unless such failure is harmless, be permitted to use as evidence at trial . . . the information or witness not disclosed, except by leave of court for good cause shown.

---

[8] In their opening brief appellants cite a version of Rule 37 that was not in effect at the time this action was filed; however, they concede in their reply brief that the applicable version of Rule 37 is the version cited by Lexon, which was in effect until April 15, 2014.

. . . .

> (2) A party seeking to use information which the party first disclosed later than sixty (60) days before trial must obtain leave of court by motion, supported by affidavit, to extend the time for disclosure.  Such information shall not be used unless the motion establishes and the court finds:
>
>> (i)      that the information would be allowed under the standards of subsection (c)(1) notwithstanding the short time remaining before trial; and
>>
>> (ii)      that the information was disclosed as soon as practicable after its discovery.

Under this version of the Rule, leave from the trial court is not required if a disclosure is made after a disclosure deadline so long as the disclosure is made more than sixty days before trial.  The disclosure here was made more than seven months before trial.  Thus, leave from the court was not required and the trial court did not abuse its discretion by admitting the schedule of rates.

### C.  Alleged Improper Expert Opinion Testimony

¶17      Finally, appellants argue that the trial court erred by allowing Lexon to offer undisclosed expert opinion testimony about the industry standard regarding frequency of premiums on subdivision bonds through its lay witnesses, and by allowing Lexon to comment on the testimony during closing argument.  We review the trial court's decision to admit lay witness opinion testimony for an abuse of discretion.  *Lewis v. N.J. Riebe Entrs.*, 170 Ariz. 384, 396, 825 P.2d 5, 17 (1992).

¶18      At trial, appellants objected to Lexon's witnesses testifying about an industry standard regarding the frequency of subdivision bond premiums (both during Lexon's direct examination of those witnesses and in the context of several jury questions), on the ground that the witnesses had not been disclosed as expert witnesses.  The trial court ruled that Lexon would not be permitted to elicit testimony about industry standards.  The court, however, permitted Lexon to elicit testimony from its witnesses Dawn Fykes, Gregory Semrow, and Michael Belinski, about their firsthand experience with subdivision bond premiums.  Fykes, a Mahoney Group

employee with experience procuring subdivision bonds, testified that she never procured a subdivision bond for John Crowley, or for anyone else, that did not have annual premiums. Semrow, the underwriting vice president of Lexon who worked with Mahoney Group on the Valley Springs and Cedar Ridge bonds, testified that he underwrote tens of thousands of subdivision bonds during his career and none had premiums that were other than annual or bi-annual. Belinski testified that in his experience as Lexon's collections attorney, he never saw an instance where Lexon did not charge a subdivision bond annually. In its closing argument, Lexon argued that other GAIs appellants had entered into for bonds procured by Mahoney Group contained language similar to the Lexon GAIs "[b]ecause that language, that type of agreement is what's typical in the surety industry." Counsel further argued that Lexon's witnesses "all testif[ied] that premiums due on subdivision bonds are always, always due annually." Appellants made no objections during Lexon's closing argument.

¶19        Arizona Rule of Evidence 701 provides:

**Opinion Testimony by Lay Witnesses**

If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

(a) rationally based on the witness's perception;

(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

We find no abuse of discretion. Lexon's lay witnesses, who all had years of experience with subdivision bonds, gave testimony rationally based on their own experience with subdivision bonds, and the testimony was helpful to determining the facts of the case. Furthermore, appellants waived their argument concerning Lexon's closing argument by failing to make a timely objection below. *See Martinez v. Jordan*, 27 Ariz. App. 254, 256, 553 P.2d 1239, 1241 (1976) (citing *Tryon v. Naegle*, 20 Ariz. App. 138, 510 P.2d 768 (1973)).

### D. Attorneys' Fees and Costs

**¶20**        Both sides request their attorneys' fees and costs on appeal pursuant to A.R.S. § 12-341.01 (2016).   We award Lexon reasonable attorneys' fees and costs upon compliance with ARCAP 21.

## CONCLUSION

**¶21**        For the foregoing reasons, we affirm the judgment in favor of Lexon.



AMY M. WOOD • Clerk of the Court
FILED:   AA