NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

OYESIJI A. AROJOJOYE, M.D., *Petitioner*,

*v.*

VICKIE ALLEN, Special Administrator of the Estate of CRYSTAL ALLEN, for and on behalf of the Decedent's estate; VICKIE ALLEN, herself as surviving mother and on behalf of all statutory beneficiaries, *Respondent*.

No. 1 CA-SA 24-0270

FILED 04-17-2025

Petition for Special Action from the Superior Court in Maricopa County
No. CV2020-055357
The Honorable Michael D. Gordon, Judge

**JURISDICTION ACCEPTED, RELIEF GRANTED**

COUNSEL

Jones, Skelton & Hochuli P.L.C., Phoenix
By Douglas R. Cullins, Eileen D. GilBride
*Counsel for Petitioner*

Jeffrey L. Victor, P.C., Scottsdale
By Jeffrey L. Victor
*Counsel for Respondent*

---

## MEMORANDUM DECISION

Judge Daniel J. Kiley delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge D. Steven Williams joined.

---

**K I L E Y**, Judge:

¶1        Vickie Allen ("Allen") filed this medical negligence and wrongful death action against Oyesiji Arojojoye, M.D., ("Arojojoye") and others arising out of the death of her 40-year-old daughter Crystal Allen ("Crystal"). Arojojoye moved for summary judgment on Allen's claims, asserting that under A.R.S. § 12-2604(A), her standard-of-care expert was not qualified to testify against him. After the superior court denied his motion, Arojojoye sought relief by special action. For reasons that follow, we accept jurisdiction and grant relief.

### FACTS AND PROCEDURAL BACKGROUND

¶2        Crystal, a stroke victim, was a patient at a skilled nursing facility in 2018. Arojojoye, who was board-certified in internal medicine by the American Board of Medical Specialties ("ABMS") and board-certified in wound care by the American Board of Wound Management ("ABWM"), provided medical treatment to her. Among other things, Arojojoye evaluated a pressure ulcer on her left hip and performed a bedside debridement. When Crystal developed sepsis from pneumonia and died, Allen sued Arojojoye and the other defendants, alleging, *inter alia*, that they "failed to timely and accurately assess" Crystal's "medical conditions," "failed to appropriately treat" her, and failed to prevent her from "incurring injurious pressure ulcers."

¶3        Allen identified Andrew Marc Meillier, M.D., ("Meillier") who is board-certified in internal medicine, as her standard-of-care expert. Arojojoye moved to preclude Meillier as an expert on the basis that he was not a wound care specialist. The superior court denied his motion to preclude without prejudice to the request being re-urged after further discovery.

¶4        Arojojoye later moved for summary judgment, arguing that Allen could not establish her claim because her expert was not qualified to testify about the applicable standard of care. Arojojoye supported his

motion with his own declaration stating that, although he was certified in both internal medicine and wound care, he treated Crystal in the latter capacity as "a wound care management specialist." Because Meillier "is Board certified in internal medicine only," Arojojoye asserted, A.R.S. § 12-2604(A) precludes him from testifying on the applicable standard of care in this case.

**¶5** In response, Allen did not dispute that Meillier is not certified in wound care. She nonetheless asserted that Arojojoye and Meillier "hold[] the same board certification in Internal Medicine," and therefore that Meillier "is qualified by the [statute] and related case law" to testify about the applicable standard of care.

**¶6** After further briefing and argument, the superior court denied Arojojoye's motion for summary judgment, holding that Meillier "is qualified to testify" as an expert in this case because, although Arojojoye "has a certification as a wound specialist, the care he rendered in this case . . . falls within his practice of internal medicine." Arojojoye seeks relief by special action from this ruling.

## DISCUSSION

**¶7** Though highly discretionary, the exercise of special action jurisdiction may be warranted when the petitioner has no equally plain, speedy, and adequate remedy by appeal. *Kelly v. Blanchard*, 255 Ariz. 197, 199, ¶ 7 (App. 2023); *see also* Ariz. R.P. Spec. Act. 12(a).[1] The challenged ruling here is interlocutory in nature and cannot be reviewed on direct appeal. *See* A.R.S. § 12-2101. Further, a post-judgment appeal in a medical negligence action is not an adequate remedy for the denial of a dispositive motion challenging the qualifications of the plaintiff's standard-of-care expert. *See Lo v. Lee*, 231 Ariz. 531, 532, ¶ 1 (App. 2012); *cf. Sanchez v. Coxon*, 175 Ariz. 93, 94-95 (1993) (accepting special action from denial of motion to dismiss based on claim of immunity, in part because "declining jurisdiction would require Petitioners to stand trial – thereby losing much of the benefit

---

[1] The Arizona Supreme Court revised the Arizona Rules of Procedure for Special Actions effective January 1, 2025. The new rules apply in all special actions pending on that date, unless doing so would be infeasible or cause an injustice. Ariz. R.P. Spec. Act. 1 Application Note. This action was pending on January 1, 2025. Because applying the new rules is feasible and would not cause an injustice, we apply them here.

of their claimed immunity" (citation omitted)). For these reasons, we accept jurisdiction.

¶8        Arojojoye challenges the superior court's determination that Meillier is qualified to testify under A.R.S. § 12-2604. "Apart from issues of statutory interpretation," which are reviewed de novo, "determinations on expert qualifications" are reviewed for abuse of discretion. *Baker v. Univ. Physicians Healthcare*, 231 Ariz. 379, 387, ¶ 30 (2013) (citation omitted).

¶9        Section 12-2604 delineates the qualifications necessary for expert testimony on the standard of care in a medical malpractice case. The statute provides in relevant part as follows:

> In an action alleging medical malpractice, a person shall not give expert testimony on the appropriate standard of practice or care unless the person is licensed as a health professional in this state or another state and the person meets the following criteria:
>
> 1. If the party against whom or on whose behalf the testimony is offered is or claims to be a specialist, specializes at the time of the occurrence that is the basis for the action in the same specialty or claimed specialty as the party against whom or on whose behalf the testimony is offered. If the party against whom or on whose behalf the testimony is offered is or claims to be a specialist who is board certified, the expert witness shall be a specialist who is board certified in that specialty or claimed specialty.

A.R.S. § 12-2604(A)(1). The statute thus makes clear that, "in a medical malpractice action, only physicians with comparable training and experience may provide expert testimony regarding whether the treating physician provided appropriate care." *Baker*, 231 Ariz. at 383, ¶ 9. If the treating physician is or claims to be a specialist and the treatment at issue was within the specialty or claimed specialty, the "testifying expert [must] specialize 'in the same specialty or claimed specialty.'" *Id*. at 384, ¶¶ 13-14 (interpreting A.R.S. § 12-2604(A)). And, if the treating physician "is or claims to be a specialist who is board certified," the testifying expert "shall be a specialist who is board certified in that specialty or claimed specialty." A.R.S. § 12-2604(A)(1).

¶10        Asserting that he "treated [Crystal] for wound care," Arojojoye argues that Meiller is not qualified to testify against him because he "is a board-certified wound care specialist" while Meillier "is not."

**¶11**         In response, Allen argues, first, that Arojojoye failed to establish that he was certified in wound care at the time he provided the treatment at issue. Arojojoye supported his motion for summary judgment with his own declaration and a copy of documentation from the ABWM reflecting that he became certified as a wound care specialist in 2010. Allen maintains that because Arojojoye provided only "a copy of his initial [ABWM] membership approval" in 2010, with no "documentation showing renewal for 2018," Arojojoye failed to "sufficiently demonstrate" that he still held the certification when he rendered the treatment at issue.

**¶12**         A witness is competent to testify about any relevant matter of which he has personal knowledge, and "[e]vidence to prove personal knowledge may consist of the witness's own testimony." Ariz. R. Evid. 602. Arojojoye stated in his declaration that he received his certification in wound care from the ABWM in 2010 and renewed it each year until 2020. Even without corroborating documentation, Arojojoye's statement in his declaration, uncontroverted by other evidence, establishes that he was still certified as a wound care specialist in 2018. The record thus supports the superior court's finding that, at the time Arojojoye provided the treatment at issue, he was certified by the ABWM as a wound care specialist.

**¶13**         Allen argues, next, that notwithstanding his certification by the ABWM, Arojojoye has no "special, distinct, or advanced training in wound care." Pointing out, correctly, that the ABMS "does not recognize wound care as . . . a medical specialty or subspecialty," Allen contends that Arojojoye's certification by the ABWM is nothing more than "a mere marketing tool" to promote his practice. Indeed, Allen goes on, wound care is not mentioned as a service on his practice's website. "Outside of this lawsuit," she concludes, Arojojoye "does not hold himself out as an expert in wound care."

**¶14**         Although "[t]he ABMS does not recognize wound care" as a distinct specialty or subspecialty, that fact is irrelevant. As the *Baker* court held, the term "specialty" as used in Section 12-2604(A) is not limited "to only the twenty-four ABMS member boards." *Baker*, 231 Ariz. at 386, ¶ 23. Instead, "specialty" includes "a broad range of practice areas" in which practitioners may seek and obtain "[b]oard certification" by "other certifying bodies." *Id.* at 385, 386, ¶¶ 19, 24. Likewise, Allen's allegation that Arojojoye sought wound care certification from the ABWM only for marketing purposes, even if true, is irrelevant; *Baker* recognizes that health care professionals may, and often do, pursue board certification in specialized fields for remunerative reasons. *See id.* at 385, ¶ 20 (noting that "[a]lthough a physician can practice general and specialty medicine

5

without board certification, obtaining certification may confer certain advantages such as hospital privileges, lower malpractice insurance rates, and higher salaries" (citation omitted)). Similarly irrelevant is Allen's claim that Arojojoye does not tout wound care services on his practice's website; as the *Baker* court held, nothing in Section 12-2604 "suggest[s] that the legislature intended the meaning of 'specialty' to turn on how a treating physician might describe his or her own particular practice." *Id.* at ¶ 17. Arojojoye's board certification in wound care by the ABWM establishes that when he provided the treatment at issue, he was a wound care specialist within the meaning of Section 12-2604(A).

**¶15**　　　　Allen contends that Arojojoye cannot be considered a "specialist" because, by his own admission, Arojojoye allowed his ABWM certification to lapse in 2020. Not so. Section 12-2604(A)(1) focuses on the treating physician's specialty "*at the time of the occurrence* that is the basis for the action." A.R.S. § 12-2604(A)(1) (emphasis added). The subsequent lapse of his board certification did not retroactively strip Arojojoye of his status as a wound care specialist at the time he treated Crystal.

**¶16**　　　　Allen argues that, irrespective of his status as a specialist, "at the time he provided medical care" to Crystal, Arojojoye was "engaging in the practice of internal medicine," not "acting as a wound care specialist." She supports her assertion on this point with Meillier's declaration, which states in part that an internist's practice "involves evaluation of wounds and appropriate management" and that, "[a]s part of" his own "regular practice," Meillier "routinely oversee[s] wound care." Allen maintains that, because Meillier, like Arojojoye, is "a board certified internist who . . . provides wound care management services in a hospital environment," Meillier "is qualified to offer expert testimony in this matter."

**¶17**　　　　In resolving a challenge to an expert's qualifications in a medical negligence case, the court must "determine if the care or treatment at issue" was within the treating physician's specialty. *Baker*, 231 Ariz. at 386, ¶ 27. Here, the superior court found that, even though Arojojoye "has a certification as a wound specialist," the medical care "he rendered in this case . . . falls within his practice of internal medicine." To the extent this constitutes a finding that the medical treatment at issue in this case was outside Arojojoye's wound care specialty, this finding is supported by no evidence in the record. In his declaration, Arojojoye states that he saw the patient "in the capacity of a wound care management specialist." Arojojoye's assertion on this point is consistent with Crystal's medical records as summarized in Meillier's declaration. Meillier's declaration includes a timeline of events that Meillier created based on his review of

Crystal's medical records. The timeline includes quotes taken from notes from Crystal's medical records showing that, upon her admission in July 2018, she began receiving treatment from the "wound care team"; that "[w]ound care service Dr. Arojojoye was consulted for evaluation . . . on August 6, 2018"; and that on October 1, 2018, "Dr. Arojojoye of the wound care team . . . performed a bedside debridement." The patient's medical records as summarized in the declaration of Allen's own expert, therefore, support Arojojoye's assertion that he provided the treatment at issue in his capacity as a wound care specialist.

¶18    Allen argues that Arojojoye's wound care specialization is irrelevant because Meillier's declaration establishes that internists, too, provide wound care treatment. Allen's assertion that internists regularly provide competent wound care, though no doubt true, misses the point; the fact that the treatment at issue here *could have been* provided by an internist who was not a wound care specialist is irrelevant. As *Baker* recognizes, "different specialists may be prepared by training and experience to treat the same medical issue for a particular patient." *Baker*, 231 Ariz. at 383, ¶ 9. Nonetheless, "when the care or treatment at issue was within" the treating physician's specialty, Section 12-2604(A) requires that "a testifying expert specialize in the same specialty" even if "physicians in other specialties might also have competently provided the treatment." *Baker*, 231 Ariz. at 384, 387, ¶¶ 14, 31 (quoting A.R.S. § 12-2604(A)); *see also Preszler v. Corwin D. Martin PC*, 1 CA-CV 20-0659, 2022 WL 175568 at *3, ¶ 14 (Ariz. App. Jan. 20, 2022) (mem. decision) (affirming dismissal of dental malpractice claim for lack of qualified standard-of-care expert; because defendant "was practicing within his board-certified specialty of oral and maxillofacial surgery at the time he rendered treatment" to the patient, expert witness who was not so certified was not qualified to testify even though, as a periodontist, he "might also have competently provided the treatment" (citation omitted)).

¶19    In support of her assertion that Arojojoye "was not practicing as a wound care specialist" when he rendered the medical treatment at issue, Allen cites her counsel's assertions to that effect at oral argument on Arojojoye's motion for summary judgment. Because counsel's unsworn assertions are not "evidence," *Woerth v. City of Flagstaff*, 167 Ariz. 412, 420 (App. 1990) (citations omitted), the arguments by Allen's counsel during the summary judgment proceedings are insufficient to controvert the other evidence in the record that Arojojoye was, in fact, acting as a wound care specialist when he treated Crystal.

¶20          In the absence of any evidence that Arojojoye was working outside his wound care specialty when providing the treatment at issue, Section 12-2604(A) requires that an expert must also be a wound care specialist to testify about the applicable standard of care. *See Baker*, 231 Ariz. at 387, ¶ 31. Because it is undisputed that Meillier is not a wound care specialist, he is not statutorily qualified to testify as a standard-of-care expert in this case, and the court erred in denying Arojojoye's motion for summary judgment.

## CONCLUSION

¶21          For the foregoing reasons, we reverse the denial of Arojojoye's motion for summary judgment and remand with directions that judgment be entered in Arojojoye's favor.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:          JR